**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BABA SOWE,

Petitioner,

v.

MICHAEL B. MUKASEY, Attorney General,

Respondent.

No. 06-72938

Agency No.
A79-569-509

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 9, 2008—Seattle, Washington

Filed August 19, 2008

Before: Arthur L. Alarcón, Susan P. Graber, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Alarcón

11027

**COUNSEL**

Mark B. Nerheim, Bauman-Becia Law Group, Seattle, Washington, for the petitioner.

Marion E. Guyton and William C. Erb, Jr., United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, D.C., for the respondent.

**OPINION**

ALARCÓN, Circuit Judge:

Baba Sowe, a native and citizen of Sierra Leone, appealed to the Board of Immigration Appeals ("BIA") from the denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Sowe presented evidence before an immigration judge ("IJ") that he and his family were persecuted by members of the Revolutionary United Front ("RUF"). We have jurisdiction over his appeal pursuant to 8 U.S.C. § 1252. We deny Sowe's application for withholding of removal and for protection under CAT. We remand his application for asylum to the BIA for a hearing to determine his eligibility pursuant to 8 C.F.R. § 1208.13(b)(1)(iii)(A).

**I**

Sowe entered the United States on or about April 4, 2001.

On June 2, 2001, Sowe executed an I-589 form seeking asylum and withholding of removal.[1] He also applied for protection under CAT. On October 15, 2004, the INS served Sowe with a notice to appear, and charged him with removability because he did not possess or present a valid entry document when he was admitted to the United States.

At his removal hearing, Sowe conceded removability. Sowe testified that he was persecuted by the RUF because he is a Muslim Maraka and because of his parents' political affiliations with the United National People's Party, a group aligned with the Sierra Leone government.

Sowe testified that sometime around August 11, 1997, RUF members came to his family's home and asked for his father and brother. AR 58. Sowe testified that the RUF was interested in his family because they were Muslim Marakas who supported the government. *Id.* The RUF members took Sowe to an RUF camp. There he was beaten and forced to do "hard work in the prison there." *Id.* at 60. He testified that he was beaten because he "didn't want to tell them where [his] parents were and since they [knew] that [he was] a Muslim Maraka." *Id.* at 60. Sowe testified that he escaped the camp after three weeks. *Id.* at 61.

Sowe testified that members of the RUF returned to his family's home on January 10, 1998. AR 62. They forcibly took him to their camp. There he was forced to do laundry, clean, and perform hard labor. *Id.* at 65. He testified that he was beaten because he is a Muslim Maraka and because he refused to disclose his father's location. *Id.* at 66-67. After ten days at the camp, Sowe escaped. *Id.* at 67.

---

[1]Form I-589 is an application for asylum and withholding of removal. *See* 8 C.F.R. § 208.3(a) ("An Asylum applicant must file Form I-589, Application for Asylum and for Withholding of Removal, together with any additional supporting evidence in accordance with the instructions on the form.").

Sowe further testified that on March 4, 1999, members of the RUF returned to his home. Sowe stated that the rebels "just start[ed] beating me and they took me away again." *Id.* at 68. He testified that the rebels came to his home because his father was a Muslim Maraka and the imam of a mosque, and because his family did not support the RUF. *Id.* On this date, he was taken by force to an RUF camp because he refused to tell the RUF where his father was. *Id.* At the camp, he was forced to do odd jobs. *Id.* He escaped after five days. *Id.* at 69.

Sowe testified that members of the RUF returned to his family's home on February 10, 2001, and killed his parents. *Id.* at 69. On the same date, an RUF rebel "took a machete out of [his] pocket and . . . . chop[ped Sowe's brother's] hand off." *Id.* at 70-71. The rebels seized Sowe's sister and removed her from her home. AR 71.[2] Sowe escaped and fled to Freetown. *Id.* at 72. He later entered the United States on or about April 4, 2001. *Id.*

The IJ concluded that Sowe was not a credible witness. The IJ stated: "I do not find the respondent to be a credible witness in that, as noted, the Form I-589 is of an extremely skeletal nature and notwithstanding the passage of so many years, has not been supplemented by any kind of a statement." AR 40. Alternatively, the IJ stated:

> even if we were to accept the respondent's testimony as true, I would find that there have been dramatic changes in Sierra Leone, as noted above, in terms of the United Nations involvement, the multiple rounds of elections, the progress that has been made so that the international presence is being withdrawn and so

---

[2]Although both parties assert that Sowe's sister was raped, that fact was alleged only in his asylum application, AR 127, and in a letter written by his sister, attached to his removal proceedings prehearing statement, AR 239.

forth, so that under such case law as *Gonzalez-Hernandez v. Ashcroft*, 336 F.3d 995 (9th Cir. 2003), the objective component of the claim can no longer be established.

AR 42. The IJ's findings regarding the changes in Sierra Leone were based on a 2005 U.S. Department of State Country Report.[3] The IJ denied Sowe's application for asylum, withholding of removal, and protection under CAT. The IJ also noted that Sowe was ineligible for voluntary departure. Sowe filed a timely appeal with the BIA challenging the IJ's decision.

## II

The BIA dismissed the appeal based on the IJ's alternative holding that, even if Sowe's testimony were deemed credible and demonstrated past persecution, the presumption of future persecution was rebutted by the evidence in the record reflecting a change in country conditions. It stated:

> We do not find the harm that the respondent claims to have suffered, that of being detained and beaten by the RUF, to be sufficiently compelling to support a grant of asylum in the absence of a well-founded fear of future persecution (*see Matter of Chen*, 20 I&N Dec. 16 (BIA 1989); nor do we find there to be a reasonable possibility that the respondent may suffer other serious harm upon removal to Sierra Leone. *See* 8 C.F.R. §§ 1208.13(b)(1)(iii)(A), (B).

AR 3. The BIA did not review the IJ's adverse credibility findings. It stated: "We need not reach the issue whether the adverse credibility determination was correct."[4] *Id.* The BIA

---

[3]This report was issued in February of 2005, but describes the conditions in Sierra Leone in 2004. We will refer to it as the "2004 country report."

[4]The BIA appears to have assumed, for purposes of disposing of Sowe's appeal, that he suffered past persecution. It did not decide, however,

concluded that Sowe had failed to establish his eligibility for asylum and withholding of removal. It also determined that Sowe had failed to demonstrate that if removed to Sierra Leone, he would more likely than not be tortured, as required for relief under CAT.

Sowe's timely petition for review was filed on June 7, 2006.

## III

"The BIA's decision that an alien has not established eligibility for asylum is reviewed for substantial evidence." *Hanna v. Keisler*, 506 F.3d 933, 937 (9th Cir. 2007). "We review the IJ's factual findings regarding changed country conditions for substantial evidence." *Smolniakova v. Gonzales*, 422 F.3d 1037, 1052 (9th Cir. 2005). We also review for substantial evidence the BIA's determination that a petitioner has not qualified for withholding of removal, and that a petitioner is ineligible for CAT relief. *Kaiser v. Ashcroft*, 390 F.3d 653, 657 (9th Cir. 2004); *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003). Sowe's petition for review challenges the decisions of the IJ and the BIA on several grounds.

## A

**[1]** Sowe contends that both the IJ and the BIA erred in denying his asylum claim on the ground that changed country conditions made it safe for him to return to Sierra Leone. Unless there is reason to grant discretionary relief pursuant to 8 C.F.R. § 1208.13(b)(1)(iii), an asylum application will be denied if "[t]here has been a fundamental change in circum-

whether the IJ erred in finding that Sowe was not a credible witness. "Thus, because the BIA has expressly declined to address [Petitioner's] credibility, we do not decide that issue here in the first instance." *Hanna v. Keisler*, 506 F.3d 933, 937 (9th Cir. 2007).

stances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(1)(i)(A).

Sowe's contention that the BIA erred in concluding that the presumption of future persecution had been rebutted by the evidence of changed conditions in Sierra Leone raises a preliminary question as to whether we review the IJ's resolution of this issue or the BIA's conclusion. *See Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995) ("Where the Board . . . conduct[s] a de novo review of the record, our review is limited to the decision of the Board except to the extent that the IJ's opinion is expressly adopted by the Board."). Here, the BIA did not state whether it was conducting a *de novo* review of the IJ's findings regarding country conditions in Sierra Leone. However, its holding regarding country conditions is nearly identical to the IJ's. "To the extent that the BIA incorporates the IJ's decision as its own, we treat the IJ's statement of reasons as the BIA's and review the IJ's decision." *Gonzalez v. INS*, 82 F.3d 903, 907 (9th Cir. 1996).

**[2]** Sowe first asserts that the IJ and the BIA erred in relying "primarily on the Department of State's country report for 2004 (released February 28, 2005)" to rebut Sowe's future persecution claim on the ground that country conditions had changed. *Pet'r Br.* at 24. Sowe argues that "[these] generalized materials are insufficient to rebut Mr. Sowe's presumed well-founded fear of future persecution." *Id.* at 24. Reliance on the 2004 country report was not erroneous. U.S. Department of State country reports are "the most appropriate and perhaps the best resource for information on political situations in foreign nations." *Kazlauskas v. INS*, 46 F.3d 902, 906 (9th Cir. 1995) (internal quotations marks omitted).

Next, Sowe contends that

contrary to the BIA's (and the IJ's) assertions, [the 2004 country report indicates that] the "disarmament" has not been completed, the Sierra Leone Police are undisciplined and incompetent, the government of Sierra Leone has not devoted sufficient resources to develop a competent police force, and . . . the government of Sierra Leone remains unwilling or unable to control RUF or former RUF rebels.

*Pet'r Br.* at 26. In support of this statement, Sowe has quoted from selected portions of the 2004 country report. In a related argument, Sowe contends that "[n]o individualized analysis took place in this case and thus the BIA and the IJ abused their discretion." *Id.* at 29.

**[3]** We are not in a position to second-guess the IJ's construction of the somewhat contradictory 2004 country report. *See Gonzalez-Hernandez v. Ashcroft*, 336 F.3d 995, 1000 (9th Cir. 2003) ("[T]he agency, not a court of appeals, must construe the country report and determine if country conditions have changed such that the applicant no longer has a well-founded fear of persecution."). "[W]here the [IJ] rationally construes an ambiguous or somewhat contradictory country report and provides an individualized analysis of how changed conditions will affect the specific petitioner's situation, substantial evidence will support the agency determination." *Id.* (citation and internal quotation marks omitted).

**[4]** Substantial evidence supports the IJ's findings that the country conditions that affected Sowe have improved. Sowe's asylum claim is premised upon his fear of being persecuted by the RUF because he is a Muslim Maraka, and because of his parents' political affiliations. The IJ noted that the 2004 country report found that RUF members have been tried by a war crimes tribunal and that the Sierra Leone government is taking action against the RUF. The IJ further considered the fact that Islam was practiced by 60 percent of Sierra Leone's population, and that relations between various religious commu-

nities were amicable. The IJ acknowledged that in 1999, the RUF took action against religious leaders, but that "this information is from 1999 when the civil war was going forward and there have been significant changes in Sierra Leone [since then]." AR 41.

Next, Sowe argues that the BIA's and the IJ's conclusions regarding country conditions were undermined by a 2003 country report, released on February 25, 2004. He cites no authority for the proposition that information in an outdated country report should be given more weight than information in a more recent report.

## B

Sowe also claims that the BIA "impermissibly place[d] the burden upon Mr. Sowe to establish that he would face persecution if returned to Sierra Leone." *Pet'r Br.* at 30 (citing the BIA's conclusion that he failed to show "a pattern or practice of persecution or that there is any continuing interest in him"). In this aspect of its decision, the BIA did not adopt the IJ's reasoning. Therefore, we shall review the BIA's conclusion.

**[5]** The BIA did not require Sowe to prove that country conditions had not changed. Rather, in the statement Sowe challenges, the BIA explained that because the government had succeeded in rebutting any showing of persecution, Sowe did not have a well-founded fear of persecution. This is an accurate statement of the law. *See Mamouzian v. Ashcroft*, 390 F.3d 1129, 1135 (9th Cir. 2004) ("The government must . . . rebut th[e] presumption by demonstrating by a preponderance of the evidence that country conditions have changed or that relocation is possible, so that the petitioner no longer has a well-founded fear that she would be persecuted if she were to return.").

## C

**[6]** Sowe also alleges that his well-founded fear of persecution was not rebutted because "[t]he Government failed to

establish that internal relocation was a reasonable option." *Pet'r Br.* at 33. Neither the BIA nor the IJ addressed this issue. However, it was not error to avoid it. The presumption that an asylum applicant has a well-founded fear of persecution can be rebutted *either* by a showing that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality" *or* by a showing that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(1)(i)(A), (B). Substantial evidence supports the conclusions of the IJ and the BIA that as a result of fundamental changes in Sierra Leone, the RUF no longer persecutes any group on account of race, religion, nationality, membership in a particular social group, or political opinion, including the Muslim Maraka. This evidence rebutted the presumption of a well-founded fear of future persecution.

## D

We next turn to Sowe's argument that he is eligible "for a humanitarian grant of asylum on account of the severe forms of past persecution that he and his family suffered and the reasonable possibility that he will suffer other serious harm if removed to Sierra Leone" pursuant to 8 C.F.R. § 1208.13(b)(1)(iii)(A), (B). *Pet'r Br.* at 39.

**[7]** "[I]t is now within the discretion of the IJ and BIA to grant asylum to victims of past persecution whose fear of future persecution has been rebutted." *Belishta v. Ashcroft*, 378 F.3d 1078, 1081 (9th Cir. 2004) (order) (citing 8 C.F.R. § 1208.13(b)(1)(iii)(A), (B)). Section 1208.13(b)(1)(iii)(A) provides that an applicant who does not have a well-founded fear of future persecution "may be granted asylum, in the exercise of the decision-maker's discretion, if . . . [t]he applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution." In determining whether an applicant

qualifies for this relief, the BIA must "consider the level of atrocity of past persecution." *Lopez-Galarza v. INS*, 99 F.3d 954, 963 (9th Cir. 1996).

**[8]** The BIA denied discretionary relief pursuant to section 1208.13(b)(1)(iii)(A), stating: "[w]e do not find the harm that respondent claims to have suffered, that of being detained and beaten by the RUF, to be sufficiently compelling to support a grant of asylum in the absence of a well-founded fear of future persecution." The BIA erred in failing to determine whether, assuming the truth of Sowe's testimony that he witnessed his parents' murder, the severing of his brother's hand, and his sister's kidnaping, he provided compelling reasons for his being unwilling or unable to return to Sierra Leone. Because we lack the authority to act as fact-finders, or to determine credibility in the first instance, we must remand to the BIA the question whether Sowe is eligible for asylum pursuant to section 1208.13(b)(1)(iii)(A). *INS v. Orlando Ventura,* 537 U.S. 12, 16-18 (2002) (per curiam).

**[9]** Sowe also alleges that the BIA erred in denying him relief pursuant to section 1208.13(b)(1)(iii)(B). As to that claim, the BIA concluded that there was no reasonable probability that Sowe "would suffer other serious harm upon removal to Sierra Leone." AR 3. Sowe argues this was error because his arguments relating to asylum and withholding of removal establish that he "faces a reasonable likelihood of other serious harm if forced to return to Sierra Leone." We disagree. The evidence of changed country conditions effectively rebutted the presumption that he would suffer future persecution. Furthermore, to be eligible for asylum pursuant to section 1208.13(b)(1)(iii)(B), Sowe must show " 'other serious harm' aside from persecution." *Recinos de Leon v. Gonzales*, 400 F.3d 1185, 1190 (9th Cir. 2005). Sowe has failed to show that the BIA erred in determining that he was not eligible for asylum pursuant to section 1208.13(b)(1)(iii)(B).

**E**

**[10]** Sowe contends that he is eligible for withholding of removal. In *Gonzalez-Hernandez*, we concluded that the BIA correctly denied an asylum claim because "the INS rebutted the presumption that Gonzalez has a well-founded fear of future persecution." 336 F.3d at 998. When the government rebuts an applicant's well-founded fear of future persecution, it defeats the applicant's asylum claim, *and* his or her claim for withholding of removal. *See id.* at 1001 n.5 (holding that because the applicant and his family "do not have a well-founded fear of persecution, it necessarily follows that they do not qualify for withholding of removal"). Therefore, the BIA's findings regarding changed country conditions also defeat Sowe's withholding of removal claim.

**F**

Sowe argues that the BIA erred in denying his CAT claim. "[T]o be eligible for relief under [CAT], a petitioner must show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001) (quoting 8 C.F.R. § 208.16(c)(2)).

The BIA concluded that Sowe "has not established a fear of the Sierra Leonean government and current country conditions . . . do not suggest that if the respondent is removed to Sierra Leone he will more likely than not be tortured." AR 3. Sowe contends that, in reaching this conclusion, the BIA implicitly held that Sowe had to prove that he will be tortured at the hands of the government, or that "the government has [to have] actual awareness of an individual or a group's inclination to torture him personally." *Pet'r Br.* at 44-45.

This is an unreasonable interpretation of the BIA's order. The order as a whole establishes that the BIA understood that Sowe sought relief based on his claim that he fears the RUF.

The BIA concluded that Sowe failed to establish that the RUF would torture him upon his return to Sierra Leone, and cited 8 C.F.R. §§ 1208.16(c)(3) and 1208.18(a) in support of its conclusions. Section 1208.16(c)(3) describes the kind of evidence that must be considered in determining "whether it is more likely than not that an applicant would be tortured in the proposed country of removal." Section 1208.18(a) defines torture.

Sowe further contends that the BIA erred in denying CAT relief because "country conditions have not improved such that Mr. Sowe does not have a real fear that more likely than not that he will be tortured at the hands of former RUF soldiers." *Pet'r Br.* at 45. In particular, he claims that the BIA "fail[ed] to take into consideration all the relevant evidence in the record." *Id.* at 46.

The evidence Sowe relies upon to demonstrate that he was tortured is the same evidence he cited in support of his asylum claim. However, just as changed country conditions can defeat an asylum claim, they can also defeat a claim for CAT protection. *See El Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004) (holding that "the El Himris have not shown that it is more likely than not that they will suffer torture inflicted by the government if they return to Kuwait" because "most of the physical violence perpetrated by the government against Palestinians ended when constitutional government returned to Kuwait").

**[11]** Here, as in the asylum context, Sowe's arguments do not establish that the country conditions in Sierra Leone have remained stagnant. The BIA's conclusion that Sowe will not be tortured because conditions in Sierra Leone have changed is supported by substantial evidence.

## IV

**[12]** Sowe requests attorneys' fees and other costs pursuant to 28 U.S.C. § 2412(d)(1)(B). We deny Sowe's request

because it is premature. *See id.* ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection . . . .").

The petition for review is DENIED IN PART and GRANTED IN PART. We REMAND for further proceedings regarding Sowe's application for asylum pursuant to 8 C.F.R. § 1208.13(b)(1)(iii)(A).

The parties shall bear their own costs on appeal.