**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTIPAS JOHNLANG KONOU,
*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney General,
*Respondent*.

No. 09-71454

Agency No.
A088-450-936

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 7, 2013—San Francisco, California

Filed May 9, 2014

Before: Sidney R. Thomas, Ronald Lee Gilman,[*]
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Gilman

---

[*] The Honorable Ronald Lee Gilman, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

# SUMMARY[**]

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of asylum, withholding of removal, and protection under the Convention Against Torture.

The panel held that the Board may consider sentencing enhancements for purposes of determining whether an alien who has not committed an aggravated felony has nonetheless committed a particularly serious crime, and that in this case, the Board did not abuse its discretion in concluding that the nature of petitioner's conviction, the circumstances and facts underlying the conviction, and the type of sentence imposed, including the sentencing enhancement, supported the finding that petitioner's assault and battery conviction constituted a particularly serious crime.

The panel held that substantial evidence supported the Board's determination that petitioner failed to establish a clear probability of future torture because the Marshall Islands country report indicated that laws criminalizing homosexuality were categorically not enforced.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Alison Dixon, San Francisco, California, for Petitioner.

Tony West, Assistant Attorney General, Civil Division, Ernesto H. Molina, Jr., Assistant Director, D. Nicholas Harling (argued), Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

GILMAN, Circuit Judge:

Petitioner Antipas J. Konou seeks review of an order by the Board of Immigration Appeals (BIA) reversing the Immigration Judge's (IJ's) finding that Konou was eligible for relief under the Convention Against Torture (CAT). This case arises from the fact that Konou fled the Marshall Islands in 1980 as a teenager after being sexually assaulted and beaten as a homeless, homosexual child. The authorities there allegedly did nothing to intervene. He came to California under a student visa and remained without documentation.

In 1999, Konou was convicted in a California state court of assault with a deadly weapon other than a firearm and of battery with serious bodily injury following a fight with his then-boyfriend. The IJ found that this crime was particularly serious, rendering Konou ineligible for withholding of removal. But the IJ further found that Konou was more likely than not to be tortured for his homosexuality if forced to

return to the Marshall Islands.  The IJ therefore granted Konou CAT relief.

On review, the BIA reversed the IJ's CAT determination because it concluded that the Marshall Islands has no enforced prohibition on homosexuality.  But the BIA affirmed the IJ's particularly-serious-crime determination, thus subjecting Konou to immediate deportation. Konou has appealed.  For the reasons set forth below, we **DENY REVIEW** of the BIA's decision.

## I.  BACKGROUND

The BIA summarized the facts underlying its decision as follows:

> The respondent is a native and citizen of the Marshall Islands who alleges that he has been harmed and will more likely than not be tortured on account of his homosexuality. The Immigration Judge found that the respondent credibly testified that he was abused by the public on numerous occasions when he was a homeless minor. . . .

> . . . [T]he 2007 Department of State report provides that "there were no accounts of societal violence based on sexual orientation" and that in general "homosexuals were accepted in society" (Exh. 3).  The Immigration Judge found that Marshall Islands law criminalizes homosexuality with a maximum penalty of 10 years and that the *potential enforcement* of such law established

that the respondent will more likely than not be tortured (I.J. at 11). However, the 2007 Department of State report also provides that there are "no *enforced* laws criminalizing homosexuality" (Exh. 3) (emphasis added). In other words, the evidence indicates that even if a law criminalizing homosexuality exists, it is not enforced. Hence, there is no objective evidence establishing that the respondent will "more likely than not" be subjected to the law criminalizing homosexuality. Moreover, substandard prison conditions and isolated instances of mistreatment of prisoners are insufficient to establish torture as defined in the Convention Against Torture. *Matter of J-E-*, 23 I&N Dec. 291 (BIA 2002), *overruled on other grounds*, *Azanor v. Ashcroft*, 364 F.3d 1013 (9th Cir. 2004). Based on the foregoing, we find that the respondent failed to establish that he will more likely than not be tortured. 8 C.F.R. § 1208.17(c). *Matter of V-K-*, 24 I&N Dec. 500 (BIA 2008). Accordingly, we will sustain the appeal and reverse the Immigration Judge's grant of deferral of removal.

Finally, we will address the Immigration Judge's particularly serious crime finding (I.J. at 7). The respondent was convicted for the offense of assault with a deadly weapon other than a firearm with great bodily injury and battery with serious bodily injury due to a fight he had with his then boyfriend in 1999 (I.J. at 5–7; Exh. 1). We are in agreement

with the Immigration Judge's conclusion that the assault and battery convictions constitute a particularly serious crime and find no reason to disturb that analysis. *See generally*, *Matter of N-A-M-*, 24 I&N Dec. 336 (BIA 2007) (discussing the broad range of information that may be considered in making an individualized determination that a conviction is for a particularly serious crime); *Matter of S-V-*, 22 I&N Dec. 1306, 1309 (BIA 2000) (particularly serious crimes encompass statutory provisions requiring an intent to deprive a person of property through the use of force, violence, assault, or putting in fear), *overruled on other grounds Zheng v. Ashcroft*, 332 F.3d 1186 (9th Cir. 2003).

Following the BIA's decision, Konou agreed to voluntary removal and currently resides in the Marshall Islands. On appeal, he claims that "[t]he BIA erred in reversing the grant of deferral of removal under the Convention Against Torture by the Immigration Court." Konou also challenges the BIA's determination that his California offenses were particularly serious crimes, rendering him ineligible for withholding of removal. The government maintains that the denial of relief under the CAT was proper, as was the determination that Konou's convictions constituted particularly serious crimes.

## II. ANALYSIS

## A. Standard of review for relief under the Convention Against Torture

In CAT cases,

> [w]e review issues of law regarding CAT claims de novo.  Where the BIA conducts its own review of the evidence and the law, this panel only reviews the BIA's decision, except to the extent it expressly adopts the IJ's decision.  The BIA's findings underlying its determination that an applicant is not eligible for relief under the CAT are reviewed for substantial evidence.  Under the substantial evidence standard, the court upholds the BIA's determination unless the evidence in the record compels a contrary conclusion.
>
> Because neither the BIA nor the IJ made an adverse credibility finding, we must assume that [Konou's] factual contentions are true.  As a result, the facts to which [he] testified are deemed true, and the question remaining to be answered becomes whether these facts, and their reasonable inferences, satisfy the elements of the claim for relief.

*Cole v. Holder*, 659 F.3d 762, 769–70 (9th Cir. 2011) (third alteration in original) (internal citations and quotation marks omitted).

## B.  Relief under the Convention Against Torture

As set forth in *Garcia-Milian v. Holder*, No. 09-71461, slip op. at 5 (9th Cir. Feb. 13, 2014) (as amended on the denial of rehearing en banc):

> Torture is an extreme form of cruel and inhuman treatment that either (1) is not lawfully sanctioned by that country or (2) is lawfully sanctioned by that country, but defeats the object and purpose of CAT.  In addition, the torture must be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.  Thus relief under the Convention Against Torture requires a two part analysis—first, is it more likely than not that the alien will be tortured upon return to his homeland; and second, is there sufficient state action involved in that torture.

(internal citations and quotation marks omitted).  "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."  8 C.F.R. § 1208.16(c)(2).

Konou and the government principally dispute whether the BIA was entitled to credit the 2007 Department of State's Country Report on Human Rights Practices on the Marshall Islands (which finds that the Marshall Islands have no enforced proscriptions on homosexuality) over Konou's testimony that, because he had been tortured as a homeless, homosexual child, he is likely to be tortured again.  We note

that Konou does not claim that the BIA applied an improper standard of review to the IJ's decision nor does he argue that the BIA engaged in improper fact finding.

The record regarding current public attitudes towards homosexuality in the Marshall Islands is less than clear. But the record contains substantial evidence supporting the BIA's conclusion that Konou would not likely be subjected to torture if removed to the Marshall Islands. *See Cole*, 659 F.3d at 783 ("When presented with a record containing conflicting evidence, we are restrained to determine only whether the agency's decision is supported by substantial evidence.").

Regulations implementing the CAT instruct that "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Among the factors that the IJ and the BIA must consider are:

> (i) Evidence of past torture inflicted upon the applicant;
>
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

*Id*. § 1208.16(c)(3).

The Report on which the BIA relied states that "[t]here were no accounts of societal violence based on sexual orientation" and that "homosexuals were accepted in society." Konou responds by contending, first, that the Report does not prove that he will avoid torture if returned and, second, that his past torture indicates that he will likely be tortured again. His concerns are not totally baseless, but his assertions are insufficient to prove that the BIA's decision lacked substantial evidence in the record.

We start with the proposition that the BIA was entitled to accord the Report substantial weight. "U.S. Department of State country reports are the most appropriate and perhaps the best resource for information on political situations in foreign nations." *Sowe v. Mukasey*, 538 F.3d 1281, 1285 (9th Cir. 2008) (internal quotation marks omitted). Indeed, "a petitioner can demonstrate eligibility for CAT relief despite an adverse credibility finding if the State Department reports, standing alone, compel[ ] the conclusion that [petitioner] is more likely than not to be tortured upon return . . . ." *Jie Cui v. Holder*, 712 F.3d 1332, 1338 n.3 (9th Cir. 2013) (alterations in original) (internal citation and quotation marks omitted).

But just as a State Department Report alone can carry an applicant's burden of establishing a probability of torture, a Report can also serve to outweigh an applicant's evidence of a probability of torture. *See Nuru v. Gonzalez*, 404 F.3d 1207, 1219 (9th Cir. 2005) ("It is well-accepted that country

conditions alone can play a decisive role in granting relief under [CAT].") (alteration in original) (internal citation and quotation marks omitted).

Moreover, the BIA's interpretation of the Report is entitled to deference. *See Sowe*, 538 F.3d at 1286. The BIA interpreted the Report to indicate that "even if a law criminalizing homosexuality exists, it is not enforced." Courts "are not in a position to second-guess the [BIA's] construction of . . . somewhat contradictory . . . country report[s]." *Id.*

Nonetheless, the BIA generally must provide "individualized analysis of how [the Report] will affect the specific petitioner's situation." *Id*. The BIA explained that because the law is not enforced, "there is no objective evidence establishing that respondent will 'more likely than not' be subject to the law criminalizing homosexuality." In other words, categorical nonenforcement of the Marshall Islands' law that criminalizes homosexuality would necessarily preclude enforcement against Konou. The Report therefore provides substantial evidence supporting the BIA's conclusion that Konou failed to carry his burden of showing that he is more likely than not to be tortured upon return to the Marshall Islands.

Nor was the BIA required, as Konou contends, to presume that Konou would be tortured again because of his own credible testimony that he had been subjected to torture as a homeless child. On this point, the BIA cites *Mohammed v. Gonzales*, 400 F.3d 785, 802 (9th Cir. 2005), for the proposition that "the showing of past torture does not give rise to a regulatory presumption of fear of future torture." The quotation is accurate, but the case contains further

language that tempers the quoted statement. In particular, *Mohammed* also noted that "[t]he regulations provide that evidence of past torture should be considered in deciding the question of future torture, and they instruct the adjudicator to consider evidence of gross, flagrant or mass violations of human rights within the country of removal." *Id.* (internal citations and quotation marks omitted). In this case, the evidence provided by the Report indicates that there are no mass violations of human rights relevant to Konou's situation.

This court has also said that "a State Department report on country conditions, standing alone, is not sufficient to rebut the presumption of future persecution when a petitioner has established past persecution." *Molina-Estrada v. I.N.S.*, 293 F.3d 1089, 1096 (9th Cir. 2002). But that authority stems from the asylum context and deals with persecution, not torture. *See id.* These contexts are not interchangeable:

> [T]he Convention's reach is both broader and narrower than that of a claim for asylum or withholding of deportation: coverage is broader because a petitioner need not show that he or she would be tortured on account of a protected ground; it is narrower, however, because the petitioner must show that it is more likely than not that he or she will be tortured, and not simply persecuted upon removal to a given country.

*Kamalthas v. I.N.S.*, 251 F.3d 1279, 1283 (9th Cir. 2001) (internal quotation marks omitted). And even if past torture is deemed sufficient to raise a presumption of future torture, the government may overcome such a presumption by

"individualized analysis of how changed conditions will affect the specific petitioner's situation." *Molina-Estrada*, 293 F.3d at 1096 (internal quotation marks omitted).

The Board was therefore entitled to conclude that Konou's testimony does not give rise to a likelihood of future torture because of the contrary evidence supplied by the Report. *Cf. Mutuku v. Holder*, 600 F.3d 1210, 1213–14 (9th Cir. 2010) ("The 2002 Country Report, when considered in its entirety, confirms that abuses like those suffered by Mutuku are still common in Kenya."). Specifically, the BIA reasoned that the factors that precipitated Konou's mistreatment as a child would be less relevant to a "self-sufficient homosexual adult." This analysis is somewhat cursory, but it is sufficient to explain why Konou's own testimony of past torture did not establish a likelihood of future torture. And because we hold that substantial evidence supports the BIA's determination that Konou is not likely to be subjected to torture based on his sexual orientation upon return to the Marshall Islands, this case differs from cases such as *Bromfield v. Mukasey*, 543 F.3d 1071, 1079–80 (9th Cir. 2008), which hold that enforced prohibitions on homosexuality can support a CAT claim.

## C. Particularly-serious-crime finding

Konou also challenges the BIA's finding that his California assault and battery convictions constituted "particularly serious crimes" that rendered him ineligible for withholding of removal. As this court held in *Blandino-Medina v. Holder*, 712 F.3d 1338, 1343 (9th Cir. 2013) (quoting 8 U.S.C. §§ 1231(b)(3)(A) and 1231(b)(3)(B)(ii)),

an alien may not be removed to a nation in which his life or freedom would be threatened on a protected ground unless the Attorney General decides [that] . . . the alien, having been convicted by a final judgment of a particularly serious crime[,] is a danger to the community of the United States.

"[A] crime is particularly serious if the nature of the conviction, the underlying facts and circumstances and the sentence imposed justify the presumption that the convicted immigrant is a danger to the community." *Delgado v. Holder*, 648 F.3d 1095, 1107 (9th Cir. 2011) (en banc).

"[T]he BIA's determination that an alien was convicted of a particularly serious crime is a discretionary decision, and we review such decisions under an abuse-of-discretion standard." *Alphonsus v. Holder*, 705 F.3d 1031, 1043 (9th Cir. 2013) (alteration in original) (internal quotation marks omitted). "Although we cannot reweigh evidence to determine if the crime was indeed particularly serious, [we] can determine whether the BIA applied the correct legal standard." *Blandino-Medina*, 712 F.3d at 1343 (alteration in original) (internal quotation marks omitted).

The BIA articulated the following standard for determining whether the alien has committed a particularly serious crime in *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982):

In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and,

most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community. Crimes against persons are more likely to be categorized as "particularly serious crimes."

The BIA did not abuse its discretion in determining that Konou's assault-and-battery convictions were particularly serious crimes. It adopted the IJ's reasoning, which noted among other things that the judge "enhanced the sentence with the additional three years [of imprisonment] for causing bodily injury." The IJ also emphasized that Konou "kicked [his boyfriend] twice" after his boyfriend was already on the ground. Thus, by citing the nature of the conviction, the circumstances and underlying facts of the conviction, and the type of sentence imposed, the IJ applied the correct legal standard. *See Delgado*, 648 F.3d at 1107.

Konou responds by arguing that the IJ improperly relied on the state court's three-year sentencing enhancement. He cites *United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002), for the proposition that an enhancement is not part of the sentence for the conviction. But the context of *Corona-Sanchez* is largely inapposite to the question that the present case poses. *Corona-Sanchez* "present[ed] the question of whether a California state conviction for the petty theft of cigarettes and beer constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) and therefore justifies increasing a sentence for unlawful reentry pursuant to 8 U.S.C. § 1326(b)(2)." *Id.* at 1202.

In holding that the California conviction did not constitute an aggravated felony for immigration purposes, this court in *Corona-Sanchez* determined that the BIA "must consider the

sentence available for the crime itself, without considering separate recidivist sentencing enhancements." *Id.* at 1209. The court reached this decision, however, only in the context of whether the offense is one "for which the term of imprisonment [is] at least one year as required by 8 U.S.C. § 1101(a)(43)(G)." *Id.* at 1208 (alteration in original) (internal quotation marks omitted). Neither party contends that the 8 U.S.C. § 1101(a)(43)(G) definition of an aggravated felony is at issue in the present case.

Instead, Konou utilizes *Corona-Sanchez* to argue that because the BIA cannot consider a sentencing enhancement when it determines whether a crime categorically constitutes an aggravated felony, and because "all aggravated felony convictions are deemed to be particularly serious crimes," *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 917 (9th Cir. 2004), it follows that the BIA cannot consider a sentencing enhancement when it determines whether a crime is particularly serious. But the foregoing logic ignores a crucial distinction: Not all particularly serious crimes are aggravated felonies. *See Delgado*, 648 F.3d at 1097 ("[W]e hold that, for purposes of withholding of removal, an offense need not be an aggravated felony to be a particularly serious crime."). In other words, just because a sentencing enhancement cannot be considered for the purpose of determining whether the crime is an aggravated felony does not imply that it cannot be considered for purposes of determining whether the crime is particularly serious.

No circuit appears to have addressed the precise issue of whether an IJ may consider sentencing enhancements for purposes of determining whether an alien who has not committed an aggravated felony has nonetheless committed a "particularly serious crime" under 8 U.S.C.

§ 1231(b)(3)(B)(ii). We conclude, in light of *Delgado*, 648 F.3d at 1097, that the IJ properly considered the two-year enhancement under the *Frentescu* factors. First, *Frentescu* instructs that the IJ may consider the "type of sentence imposed." An enhanced sentence by its plain language can be considered a type of sentence.

Second, the foregoing distinction between aggravated felonies and particularly serious crimes actually suggests broader discretion in the particularly-serious-crime determination. This court has already observed that

> [a]ggravated felonies for which an alien receives a sentence of imprisonment of five years or more are particularly serious crimes *per se.* This *per se* class, however, [does] not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

*Blandino-Medina*, 712 F.3d at 1345 (footnote and internal quotation marks omitted). In the withholding-of-removal context, this determination must be made on a case-by-case basis because "the withholding of removal statute is notably missing an analogue provision [contained in the asylum statute] permitting the Attorney General to designate crimes as categorically particularly serious [by rulemaking] even if they are not aggravated felonies for which the defendant has received a sentence of at least five years." *Id*. at 1346. This emphasis on case-by-case analysis instead of rulemaking for determining whether an offense that is not an aggravated felony nonetheless constitutes a particularly serious crime

would be undercut if the BIA were required to apply a bright-line rule to each case-by-case determination.

## III.  CONCLUSION

For all of the reasons set forth above, we **DENY REVIEW** of the BIA's decision.