NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| JORGE CANDELAS-GARCIA, | No. 19-71064 |
| Petitioner, | Agency No. A091-658-537 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 2, 2020[**]
Pasadena, California

Before: CALLAHAN and NGUYEN, Circuit Judges, and R. COLLINS,[***]
District Judge.

Jose Candelas-Garcia, the petitioner, entered the United States without

inspection or admission from Mexico in 1996. From that time until recently, he

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

did not commit any crimes and avoided deportation. A series of domestic abuse incidents several years ago, however, brought Candelas to the attention of the Department of Homeland Security (DHS), which sought to reinstate his prior order of removal based on his 1991 conviction for attempted robbery, in violation of California Penal Code section 211. Candelas applied for withholding of removal and withholding and deferral of removal under the Convention Against Torture (CAT). An immigration judge (IJ) found that Candelas was barred from withholding of removal because of his conviction of a "particularly serious crime," but granted Candelas deferral of removal under the CAT on the ground that he would likely be tortured if he were removed to Mexico because of his numerous, gang-related tattoos. In separate decisions, the Board of Immigration Appeals (BIA) affirmed the IJ's denial of withholding of removal and sustained DHS's appeal of the IJ's grant of deferral of removal.

Petitioning for review of both BIA decisions, Candelas argues that (1) the BIA abused its discretion in concluding that his crime was "particularly serious," disqualifying him from withholding; and (2) the BIA erred in overturning the IJ's determination that Candelas met his burden of showing a likelihood of future torture. We have jurisdiction under 8 U.S.C. § 1252. Reviewing the BIA's particularly-serious-crime determination for abuse of discretion and its CAT-relief determination for substantial evidence, *Arbid v. Holder*, 700 F.3d 379, 383, 385-86

(9th Cir. 2012) (per curiam), we deny the petition.[1]

1.      The BIA applied the correct legal standard for determining whether Candelas's attempted robbery conviction was "particularly serious." *See Gomez-Sanchez v. Sessions*, 892 F.3d 985, 991 (9th Cir. 2018) ("[A] crime is particularly serious if the nature of the conviction, the underlying facts and circumstances[,] and the sentence imposed *justify the presumption that the convicted immigrant is a danger to the community*." (alterations in original) (quoting *Alphonsus v. Holder*, 705 F.3d 1031, 1041 (9th Cir. 2013))).  In Candelas's case, the BIA examined (1) "the nature of the crime itself (with its requirement that the taking be by force or fear)"; (2) the circumstances and underlying facts of the conviction, including "the fact that [Candelas' crime] involved the use of a screwdriver in an attempt to rob someone, [as well as] the fact that [Candelas, the instigator and getaway driver] played a 'pivotal role' in the crime"; and (3) Candelas's "lengthy 3-year sentence," the maximum authorized confinement for his offense.

Candelas argues that his crime was not particularly serious because he "did not personally engage in any violent conduct," did not explicitly "tell his friends to steal or rob the money," and merely acted as a driver, never intending for such conduct to be carried out.  He further argues that his three-year sentence "was only

---

[1] Because the parties are familiar with the facts of this case, we do not discuss them in detail here.

half the sentence for a completed robbery." But these arguments go to the weight of the evidence rather than the BIA's application of a legal standard. *See Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1078 (9th Cir. 2015) (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). Accordingly, we lack jurisdiction to consider them. *Id.* The BIA applied the correct legal standard to determine that Candelas committed a particularly serious crime, and that determination was reasonable.

2.    "To qualify for CAT relief, a petitioner must establish that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011) (quoting 8 C.F.R. § 208.16(c)(2)). Candelas argues that the BIA (1) improperly ignored the IJ's predictive findings that Candelas would likely be tortured in Mexico, and (2) misinterpreted and improperly disregarded specific evidence bearing on Candelas's claim. These arguments present related but distinct legal questions and two different standards of review.

An IJ's predictions as to what is likely to happen to an applicant for CAT relief if the applicant is removed are "facts," subject to clear error review. *Ridore v. Holder*, 696 F.3d 907, 918-19 (9th Cir. 2012). Under this standard, "the BIA cannot disregard the IJ's findings and substitute its own view of the facts"; instead, "it must find clear error, explaining why; or, if critical facts are missing, it may

4

remand to the IJ." *Id.* at 919 (citing *Rodriguez v. Holder*, 683 F.3d 1164, 1177 (9th Cir. 2012)). Here, we find that, unlike in *Ridore*, the BIA did not ignore the evidence or reject the IJ's findings without explaining why. Instead, it addressed and "grapple[d] with the evidentiary record," *Ridore*, 696 F.3d at 916, clearly articulating why, in its view, the IJ's predictive findings were not supported by the record. Accordingly, we do not need to remand for the BIA to reconsider the IJ's grant of CAT deferral under the clear error standard.

Where, as here, the BIA addresses the evidentiary record and explains why the IJ's findings are clearly erroneous, we review for substantial evidence the BIA's independent conclusion that the petitioner does not qualify for CAT relief. Under this deferential standard, we uphold the BIA's determination "unless the evidence in the record compels a contrary conclusion." *Cole*, 659 F.3d at 770 (quoting *Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007)). When it is apparent that the BIA's analysis of the risk of future torture and state acquiescence "did not consider all of the evidence before it"—for example, if the agency "misstat[es] the record [or] fail[s] to mention highly probative or potentially dispositive evidence"—we generally remand for the BIA to reconsider its denial, taking into account the specific evidence presented. *Id.* at 771-72. Furthermore, we have held that "the BIA *must* consider the risk of torture posed by conspicuous tattoos that display affiliation with a gang, for deportation to a country where gang

5

members are routinely tortured." *Andrade v. Lynch*, 798 F.3d 1242, 1245 (9th Cir. 2015) (emphasis added) (citing *Cole*).

Candelas argues that the BIA failed to acknowledge three, small portions of the record bearing on his entitlement to CAT relief: (1) a newspaper article about repatriates to Mexico who are "sometimes assault[ed] [or] torture[d]" and gang recruitment efforts at a migrant shelter; (2) his testimony that a friend with tattoos who returned to Mexico was threatened with torture if he refused to work for the cartels; and (3) a 2015 Congressional Research Service Report that documented isolated instances of torture by the cartels. Unlike in *Cole*, however, it is not apparent that the BIA failed to consider this evidence, none of which is "potentially dispositive" with respect to Candelas's entitlement to deferral of removal. Instead, as the BIA observed, Candelas made only a "generalized" showing that violence and torture are more frequent in Mexico and that, in some instances, former gang members—including but not limited to those with tattoos— have been subject to harassment and threats by the cartels. The BIA's conclusion that Candelas did not present sufficient, particularized evidence of a likelihood of torture based on his tattoos is reasonable, and the record does not compel a contrary conclusion.

**PETITION DENIED.**[2]

---

[2] The petitioner's motions for stay of removal are denied as moot.