**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 28 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILLIAN MATIAS RAUDA, | No. 19-72868 |
| Petitioner, | Agency No. A209-189-278 |
| v. | |
| ROBERT M. WILKINSON, Acting Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 13, 2021
San Francisco, California

Before: BEA and M. SMITH, Circuit Judges, and RESTANI,** Judge.

Willian Matias Rauda, a native and citizen of El Salvador, petitions for

review of the Board of Immigration Appeals' ("BIA") final order of removal,

which adopted and affirmed the Immigration Judge's ("IJ") denial of a motion to

suppress, denial of a motion for issuance of a subpoena, and denial of eligibility for

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252(a)(1). For the following reasons, we deny the petition.

Matias Rauda entered the United States without authorization in 2014 and settled initially in San Francisco. Soon after relocating to Maryland, Matias Rauda was arrested by local police in connection with a gang-related shooting. Matias Rauda pleaded guilty to a first-degree assault charge and received a suspended sentence of twenty years imprisonment. Local officials refused to honor an immigration detainer filed by Immigration and Customs Enforcement ("ICE") and released Matias Rauda in 2017. Thereafter, Matias Rauda moved into a residence near San Francisco with his now-wife, the couples' infant child, and several other individuals.

ICE subsequently located Matias Rauda and dispatched officers to the residence to execute an outstanding immigration warrant. ICE officers entered the residence with the consent of a co-occupant, located Matias Rauda in a bedroom shared with his now-wife and two infant children, and placed him under arrest. While in custody, Matias Rauda admitted to his Salvadoran alienage and to his unlawful entry into the United States. ICE officials recorded the factual narrative of Matias Rauda's arrest and post-arrest statements in an agency form known as the Record of Deportable/Inadmissible Alien ("Form I-213").

During removal proceedings, Matias Rauda moved to suppress the Form I-

2

213 on the ground that ICE officers violated the law by invading the residence without a judicial warrant and by using excessive force to execute the arrest. Matias Rauda also moved to subpoena a panoply of documents and live testimony pertaining to his arrest and ICE's operational policies. The IJ denied both motions without a suppression hearing because the affidavits Matias Rauda submitted in support of the motions failed to establish a *prima facie* case for relief. The IJ ultimately sustained the charge of removability based on Matias Rauda's post-arrest admissions recorded in the Form I-213.

Matias Rauda then moved for deferral of removal under the CAT based on prior torture experienced as a teenager at the hands of the Mara Salvatrucha gang ("MS-13") and Salvadoran police and military officials and the risk of future torture by both groups upon his return to El Salvador. Despite crediting Matias Rauda's account of prior torture, the IJ found Matias Rauda failed to establish a likelihood of future torture by or with the acquiescence of the Salvadoran government. The BIA adopted the decisions of the IJ with additional reasoning and dismissed the appeal. *See Matter of Burbano*, 20 I. & N. Dec. 872 (1994). Matias Rauda timely petitioned for review.

Where, as here, the BIA adopts the IJ's decision, cites *Matter of Burbano*, and contributes its own reasoning, our scope of review includes both decisions. *Cordoba v. Barr*, 962 F.3d 479, 481 (9th Cir. 2020). We review the denial of

3

a motion to suppress in an immigration proceeding de novo, *Martinez-Medina v. Holder*, 673 F.3d 1029, 1033 (9th Cir. 2011), and the refusal to issue a subpoena for an abuse of discretion, *Kaur v. INS*, 237 F.3d 1098, 1099 (9th Cir. 2001). We review issues of law related to the denial of CAT relief de novo and factual findings supporting the denial for substantial evidence. *Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007). Under the substantial evidence standard, we must affirm the factual findings of the BIA and the IJ "unless the evidence in the record compels a contrary conclusion." *Id.*; *see* 8 U.S.C. § 1252(b)(4)(B).

1. The BIA and the IJ did not err in denying Matias Rauda's motion to suppress without an additional hearing. Because the exclusionary rule is generally inapplicable to immigration proceedings, a petitioner must show an "egregious violation" of his Fourth Amendment rights or a violation of federal regulations promulgated for his benefit to obtain a suppression remedy. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1041–50 (1984); *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019). Longstanding agency regulations require an alien to allege a *prima facie* case for suppression through sworn declarations before the IJ may require the Government to produce additional discovery and defend its actions at a suppression hearing. *See Matter of Barcenas*, 19 I. & N. Dec. 609 (1988).

Matias Rauda's first suppression claim is that ICE officers acted unlawfully by knocking on the front door of his residence for the purpose of effectuating an

4

arrest without a judicial warrant. *See Florida v. Jardines*, 569 U.S. 1, 6 (2013); 8 C.F.R. § 287.8(f)(2). Here, however, the ICE officers were privileged to approach the residence to execute an immigration warrant that authorized Matias Rauda's arrest in public areas or in private areas with the consent of a co-occupant. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b). We decline Matias Rauda's invitation to extend our holding in *United States v. Lundin*, 817 F.3d 1151, 1160 (9th Cir. 2016), which held that police officers violated the Fourth Amendment by approaching a home to effectuate a warrantless arrest based on probable cause that the occupant had committed several felonies. The immigration warrant licensed the officers to solicit consent to entry for the limited purpose of enforcing the civil immigration laws, a context that implicates distinct constitutional interests from those involved in a criminal case. *See Lopez-Mendoza*, 468 U.S. at 1042.

Matias Rauda's second suppression claim is that the ICE officers unlawfully entered the residence without a judicial search warrant. *See Payton v. New York*, 445 U.S. 573, 586–87 (1980); 8 C.F.R. § 287.8(c)(2)(vii), (f)(2). However, the Form I-213 clearly indicates that a co-occupant voluntarily consented to entry and twice confirmed this consent during a conversation in her native language with an officer at the front door. The declarations submitted by Matias Rauda and his now-wife failed to contest this narrative because both admit they were in the bedroom when officers entered the home. Thus, Matias Rauda failed to establish a *prima*

5

*facie* case that ICE agents acted outside the consent exception to the Fourth Amendment's warrant requirement. *See United States v. Matlock*, 415 U.S. 164, 170–71 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973).

Matias Rauda's final suppression claim is that the ICE officers used excessive force by drawing their firearms when entering his home and placing him under arrest. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989); 8 C.F.R. § 287.8(a)(ii)–(iii). We judge the reasonableness of a use of force under "the facts and circumstances of each particular case" from the perspective of "a reasonable officer on the scene." *Graham*, 490 U.S. at 396; *see also Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018). Here, Matias Rauda's declarations allege that officers pointed their firearms at Matias Rauda, his now-wife, and one of his children for at least fifteen seconds while securing the scene. This relatively high use of force was reasonable under the circumstances because the arresting officers knew Matias Rauda's criminal record included the admitted use of a firearm in a gang-related shooting. Officers reasonably sought to secure the scene and Matias Rauda's person until they could assure their own safety and the safety of other individuals in the residence. *See, e.g.*, *Yanez-Marquez v. Lynch*, 789 F.3d 434, 471–73 (4th Cir. 2015).

2. The BIA correctly determined that the IJ did not abuse its discretion in refusing to issue a subpoena. Federal regulations authorize IJs to issue subpoenas

6

on behalf of aliens in immigration proceedings when "satisfied" that the evidence requested is "essential." 8 C.F.R. § 1003.35(b)(3); *see Cuadras v. INS*, 910 F.2d 567, 573 (9th Cir. 1990). Here, the requested subpoena was not "essential" to the question of removability. The post-arrest admissions recorded in the Form I-213 were sufficient to establish alienage and unauthorized entry, and Matias Rauda failed to undermine the presumption of reliability to which the Form I-213 is entitled for immigration purposes. *See Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995). Nor was the requested subpoena "essential" to deciding the suppression motion. Because Matias Rauda failed to allege a *prima facie* case for relief, the Government was not obligated to produce discovery or to respond on the merits. We disagree with Matias Rauda's reading of the Third Circuit's decision in *Oliva-Ramos v. Attorney General*, 694 F.3d 259, 273 (3d Cir. 2012), that requiring a claimant to establish a *prima facie* case prior to compelling discovery and a response on the merits is fundamentally unfair. It is not unfair in civil proceedings to require a claimant to allege facts sufficient to support relief before putting the opposing party to the burden of discovery. *See generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

3. The BIA and the IJ did not err in denying eligibility for withholding of removal under the CAT. To establish eligibility for CAT relief, an applicant must show "it is more likely than not that he or she would be tortured if removed to

the proposed country of removal." 8 C.F.R. § 208.16(c)(2), (c)(4). Relief from deportation is available only if the torture would likely be "inflicted by" or "with the consent or acquiescence of" public officials in the receiving country. *Id.* § 208.18(a)(1); *see Barajas-Romero v. Lynch*, 846 F.3d 351, 361 (9th Cir. 2017).

Matias Rauda raises several challenges to the BIA's adoption of the IJ's findings of fact, but each lacks merit. Substantial evidence supports the determination that the Salvadoran police and military targeted Matias Rauda for torture as a teenager only because of his involvement in MS-13's violent criminal activities, including drug smuggling and the extortion of local businesses. Substantial evidence also supports the determination that Salvadoran officials would not acquiesce to torture by MS-13 upon Matias Rauda's return given the government's significant law enforcement, judicial, and paramilitary efforts to fight corruption and punish gang violence. Although these efforts have been met with mixed success, the test for governmental acquiescence is good faith effort, not efficacy. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014).

Matias Rauda further argues that the BIA and the IJ ignored evidence that El Salvador subjects deportees from the United States to increased scrutiny for former gang activity. This argument fails because the BIA and the IJ did consider country condition reports and expert testimony by Thomas Boerman discussing the Salvadoran government's enhanced scrutiny program and reasonably determined

8

that such scrutiny would not likely rise to the level of torture. Nor did the BIA and the IJ ignore evidence that El Salvador's programs to stamp out gang violence have not always prevented MS-13 from torturing former gang members and non-compliant community members. To the contrary, the BIA and the IJ took this evidence into account and reasonably concluded that evidence of the Salvadoran government's meaningful efforts to combat gang violence meant Matias Rauda failed to establish the likelihood of acquiescence to future torture required to prove eligibility for CAT relief.

Finally, Matias Rauda argues that the BIA and the IJ erred by denying CAT relief despite crediting his account of prior torture by MS-13 and by Salvadoran police and military officials. In the CAT context, prior torture does not give rise to a presumption of future torture. *See Barajas-Romero*, 846 F.3d at 363; *see also Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (en banc). The BIA and the IJ considered all relevant evidence and determined that Matias Rauda's increased maturity and renouncement of future gang activity made it unlikely that Salvadoran officials would subject him to torture upon his return. As we have explained, changed personal circumstances may outweigh evidence of past torture when assessing an applicant's risk of future torture on the entire administrative record. *See Konou v. Holder*, 750 F.3d 1120, 1126 (9th Cir. 2014).

**PETITION DENIED.**[1]

---

[1] Matias Rauda's Motion for Stay of Removal [Dkt. Nos. 1, 7] is denied as moot. The temporary stay of removal remains in effect until issuance of the mandate.