**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GUILLERMO GOMEZ-SANCHEZ,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney
General,
*Respondent.*

No. 14-72506

Agency No.
A092-924-179

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 13, 2017
San Francisco, California

Filed April 6, 2018

Before:  Kim McLane Wardlaw[*] and Michelle T. Friedland, Circuit Judges, and Janet Bond Arterton,[**] District Judge.

Opinion by Judge Arterton

## SUMMARY[***]

### Immigration

The panel granted Guillermo Gomez-Sanchez's petition for review of the published decision of the Board of Immigration Appeals, *Matter of G-G-S-*, 26 I. & N. Dec. 339 (BIA 2014), which concluded that Gomez-Sanchez was statutorily ineligible for withholding of removal because he was convicted of a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B), and vacated and remanded.

Gomez-Sanchez was convicted of assault with a non-deadly firearm weapon in violation of California Penal Code § 245(a)(1), which the BIA concluded constituted a particularly serious crime that prevented Gomez-Sanchez

---

[*] This case was submitted to a panel that included Judge Kozinski, who recently retired.  Following Judge Kozinski's retirement, Judge Wardlaw was drawn by lot to replace him.  Ninth Circuit General Order 3.2.h.  Judge Wardlaw has read the briefs, reviewed the record, and listened to oral argument.

[**] The Honorable Janet Bond Arterton, United States District Judge for the District of Connecticut, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

from being eligible for withholding of removal. In reaching this decision, the BIA held that a petitioner's mental health could not be considered when addressing whether he had committed a particularly serious crime.

The panel held that *Matter of G-G-S-* was not entitled to deference under *Chevron U.S.A., Inc. v. N.R.D.C., Inc.*, 467 U.S. 837 (1984). Under step one of *Chevron*, the panel concluded that *Matter of G-G-S-*'s blanket rule against considering mental health is contrary to Congress's clearly expressed intent that the particularly serious crime determination, in cases where a conviction falls outside the only statutorily enumerated per se category of particularly serious crimes, requires a case-by-case analysis. The panel also concluded that, even if *Matter of G-G-S-* were to survive step one of *Chevron*, it would fail at step two because the BIA's interpretation is not reasonable in that the BIA's two rationales for its broad rule – 1) that the Agency could not reassess a criminal court's findings, and 2) that mental health is never relevant to the particularly serious crime determination – are unpersuasive and are inconsistent with the law of this Circuit and the BIA's own decisions.

## COUNSEL

Bradis Vakili (argued), ACLU Foundation of San Diego & Imperial Counties, San Diego, California; Ahilan T. Arulanantham, ACLU Foundation of Southern California, Los Angeles, California; for Petitioner.

Carmel A. Morgan (argued), Trial Attorney; Shelley R. Goad, Assistant Director; Office of Immigration, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

ARTERTON, District Judge:

Guillermo Gomez-Sanchez, a native and citizen of Mexico, petitions for review of the published decision by the Board of Immigration Appeals ("BIA" or "the Board") affirming the Immigration Judge's ("IJ") finding that Gomez-Sanchez is statutorily ineligible for withholding of removal because he was convicted of a "particularly serious crime," and holding that an applicant's "mental health as a factor in a criminal act falls within the province of the criminal courts and is not a factor to be considered in a particularly serious crime analysis." *Matter of G-G-S-*, 26 I. & N. Dec. 339, 345 (BIA 2014).[1]

For the reasons set forth below, we vacate and remand to the Board for reconsideration of Petitioner's application for withholding of removal in light of this opinion.

## I.  BACKGROUND

Petitioner has lived in the United States since 1990 as a lawful permanent resident. As a teenager, he developed symptoms of a serious mental disability and was diagnosed with schizophrenia, for which he began receiving treatment. He has taken medication for his mental illness for the vast majority of his life.

In 2004, Petitioner pled guilty to assault with a deadly non-firearm weapon in violation of California Penal Code § 245(a)(1) for physically assaulting a storeowner by

---

[1] The Board uses the phrases "mental health," "mental condition" and "mental illness" interchangeably in its decision.

swinging a weightlifting bell, which grazed the top of the storeowners' head and resulted in an injury requiring stitches. During the criminal proceedings, the storeowner testified that after tackling Petitioner he "noticed that [Petitioner] was not all there." Gomez-Sanchez was sentenced to the two-year statutory minimum. Subsequently, he was charged with removability under the Immigration and Nationality Act ("INA") as an alien convicted of an aggravated felony. Immigration and Nationality Act § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).

On January 8, 2010 Petitioner filed an application for withholding of removal and relief under the Convention Against Torture ("CAT"), contending that he would be subject to persecution or torture in Mexico due to his chronic mental illness, would lack access to medication and psychiatric treatment in Mexico, and would be subject to deplorable conditions in Mexican public psychiatric hospitals and/or prisons.

The IJ found that Petitioner was ineligible for withholding of removal because he had been convicted of a particularly serious crime. She noted that that "[b]y its nature, swinging a weight bell at a person's head is a dangerous act capable of causing grave injuries," and that indeed the storeowner had received several stitches as a result of being struck. These facts, in conjunction with Petitioner's two-year sentence and the fact that his "conviction arose from the physical assault on a person," led the IJ to conclude his offense was particularly serious.[2]

---

[2] Although ineligible for withholding of removal, the IJ granted Petitioner deferral of removal pursuant to the CAT.

Mr. Gomez-Sanchez timely appealed to the BIA, challenging the finding that he could not seek withholding of removal because he had been convicted of a particularly serious crime. On July 17, 2014 a three-member panel of the BIA issued a published decision holding that "a person's mental health is not a factor to be considered in a particularly serious crime analysis and that adjudicators are constrained by how mental health issues were addressed as part of the criminal proceedings." *Matter of G-G-S-*, 26 I. & N. Dec. 339, 339 (BIA 2014).

The Board, while sympathizing with Petitioner's significant mental health struggles, stated that based on its "assessment of the nature of [Petitioner's] conviction, the prison sentence imposed, and the circumstances of his offense" the IJ was correct in finding that Petitioner's conviction for assault with a deadly weapon was for a particularly serious crime. Specifically, the Board noted that "'crimes against persons' are more likely to be categorized as particularly serious crimes." The Board then concluded "[t]his was a dangerous act capable of causing grave injuries," whose gravity "is also reflected in his 2-year sentence to prison."

The Board explained that "consideration of an alien's mental health as a factor in the criminal act falls within the province of the criminal courts," and that "[w]hether and to what extent an [alien's] mental illness or disorder is relevant to his or her commission of an offense and conviction for the crime are issues best resolved in criminal proceedings by the finders of fact." The Board further pointed out that issues concerning an individual's mental condition can be raised in criminal proceedings at various stages. Thus, the Board reasoned that it "cannot go behind the decisions of the

criminal judge and reassess any ruling on criminal culpability."

According to the Board, Petitioner's "claim that his violent act was a result of his mental illness does not lessen the danger that his actions posed to others and is therefore not relevant to [its] determination that his offense is a particularly serious crime." Although assault with a deadly weapon under the California statute at issue in this case is a general intent crime, the Board concluded that the fact that no specific intent to injure another is required "does not diminish the dangerousness of [the] acts committed in violation of this statute." To the contrary, the Board concluded that assault with a deadly weapon is an "inherently dangerous offense" warranting a finding that Petitioner is a danger to the community, "even if he did not intend to commit a particularly serious crime."

Petitioner timely petitioned for review of the BIA decision. *See* 8 U.S.C. § 1252(b)(1).

## II. STANDARD OF REVIEW AND CHEVRON DEFERENCE

Mr. Gomez-Sanchez contends that the Board committed legal error in interpreting the INA to establish the categorical rule that mental health can never be considered in determining whether a conviction constitutes a particularly serious crime. "Whether the BIA applied the proper legal standard in determining whether [Petitioner's] crime was 'particularly serious' raises a question of law." *Blandino-Medina v. Holder*, 712 F.3d 1338, 1342–43 (9th Cir. 2013). While we "'cannot reweigh evidence to determine if the crime was indeed particularly serious, [we] can determine whether the BIA applied the correct legal standard.'" *Id.* at 1343 (quoting *Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th

Cir. 2006), *overruled in part on other grounds by Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1160 n.15 (9th Cir. 2008) (en banc)).

Where, as here, the Board issues a published decision interpreting the INA, we apply the test derived from *Chevron U.S.A., Inc. v. N.R.D.C., Inc.*, 467 U.S. 837 (1984). *See Delgado v. Holder*, 648 F.3d 1095, 1102 (9th Cir. 2011) (en banc); *see also Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011). Under *Chevron*, we afford deference to the Board's reasonable interpretations of ambiguous statutes it is charged with administering. *Chevron*, 467 U.S. at 844. This requires us to

> determine whether 'the intent of Congress is clear.' If it is [we] 'must give effect to the unambiguously expressed intent of Congress.' If the statute is 'silent or ambiguous,' however . . . [we must ask] 'whether the agency's answer is based on a permissible construction of the statute.'

*Delgado*, 648 F.3d at 1102 (citing *Chevron*, 467 U.S. at 842–43).

## III.   DISCUSSION

### A. Statutory Framework

The grant of withholding of removal is mandatory if an individual proves that his "life or freedom would be threatened in [the] country [to which he or she would be removed] because of [his or her] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). Individuals convicted of particularly serious crimes,

however, are barred from obtaining withholding of removal. *See* INA § 241(b)(3)(B)(ii), 8 U.S.C. § 1231(b)(3)(B)(ii). The protection of withholding of removal is not extended to any individual who "having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. 1231(b)(3)(B)(ii). An individual

> who has been convicted of an aggravated felony (or felonies) for which [he or she] has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

8 U.S.C. 1231(b)(3)(B)(iv). "[B]ecause the term 'particularly serious crime' is not otherwise defined by statute, the Attorney General may also 'designate offenses as particularly serious crimes through case-by-case adjudication . . . .'" *See Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1077 (9th Cir. 2015) (quoting *Delgado v. Holder*, 648 F.3d 1095, 1098 (9th Cir. 2011) (en banc)).

In *Matter of Frentescu*, the BIA developed a multi-factor test for determining whether a crime was particularly serious, barring that individual from withholding of removal relief:

> In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed,

> and, most importantly, whether the type and
> circumstances of the crime indicate that the
> [individual] will be a danger to the
> community.

18 I. & N. Dec. 244, 247 (BIA 1982). The Board noted that "[w]hile there are crimes which, on their face, are 'particularly serious crimes' or clearly are not 'particularly serious crimes,' the record in most proceedings will have to be analyzed on a case-by-case basis." *Id*.

While Section 1231(b)(3)(B)(iv) has been amended since *Frentescu*, its test continues to be applied when determining whether a crime (other than aggravated felonies for which an alien receives a sentence of imprisonment of five years or more) is particularly serious. *See Alphonsus v. Holder*, 705 F.3d 1031, 1041 (9th Cir. 2013). In 2013, we articulated "the currently operative legal standard as follows: '[A] crime is particularly serious if the nature of the conviction, the underlying facts and circumstances[,] and the sentence imposed *justify the presumption that the convicted immigrant is a danger to the community*.'" *Id.* (quoting *Delgado*, 648 F.3d at 1107).

Thus, dangerousness remains the "essential key" to determining whether the individual's conviction was for a particularly serious crime. *Id.* However, "there is no statutory requirement for a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the alien." *Ramirez-Ramos v. I.N.S.*, 814 F.2d 1394, 1397 (9th Cir. 1987) (internal quotation marks omitted); *see also Matter of Carballe*, 19 I. & N. Dec. 357, 360 (BIA 1986). Rather, once an individual is found to have been convicted for committing a particularly serious crime, he or she "*shall* be considered to constitute a

danger to the community." 8 C.F.R. § 1208.16(d)(2) (emphasis added); *see also Matter of Carballe*, 19 I. & N. Dec. at 360 (those aliens who have been finally convicted of particularly serious crimes are presumptively dangers to this country's community). There is no provision in the statute or regulations whereby an individual can rebut this presumption. Therefore once this determination is made, the individual is irrebuttably presumed to be a danger.

## B.  Chevron Step One: The Intent of Congress

"Under *Chevron*, we first ask 'whether the statute is silent or ambiguous with respect to the specific issue before [us].'" *Anaya-Ortiz v. Holder*, 594 F.3d 673, 677 (9th Cir. 2010) (quoting *Chevron*, 467 U.S. at 843). We have previously held that Congress "clearly expressed its intent: the overall structure of the INA compels the conclusion that Section 1231(b)(3)(B)(iv) establishes but one category of 'per se' particularly serious crimes, and requires the agency to conduct a case-by-case analysis of convictions falling outside the category established by Congress." *Blandino-Medina*, 712 F.3d at 1345. Thus, we vacated a decision by the Board that barred the petitioner from withholding of removal relief because it determined, based solely on an analysis of the elements of the offense, that a conviction for lewd and lascivious acts with a child under the age of fourteen, in violation of California Penal Code § 288(a), "constitutes a 'particularly serious crime' *per se*." *Id.* at 1341.

Similarly, in *Konou v. Holder*, we considered a petitioner's argument that a sentencing enhancement "is not part of the sentence for the conviction" and therefore that the Board and IJ were precluded from considering the enhancement when considering whether a crime was particularly serious. 750 F.3d 1120, 1128 (9th Cir. 2014).

We rejected that argument, concluding that a sentencing enhancement is a "type of sentence," which is one of the factors to be weighed under *Frentescu*. *Konou*, 750 F.3d at 1128. In reaching that decision, we also noted that Congress's

> emphasis on case-by-case analysis instead of rulemaking for determining whether an offense that is not an aggravated felony [for which the defendant has received a sentence of at least five years] nonetheless constitutes a particularly serious crime would be undercut if the BIA were required to apply a brightline rule to each case-by-case determination.

*Id*. Thus, we refused to create a rule that would have categorically barred consideration of sentencing enhancements in determining whether a crime is particularly serious. *Id*; *see also Arteaga De Alvarez v. Holder*, 704 F.3d 730, 740 (9th Cir. 2012) (interpreting a different section of the INA, § 1229(b)(1)(D), and concluding that a rule categorically treating alternative means of immigrating as undermining claims of hardship was contrary to that statute's requirement of "individualized enquiry in each case").[3]

---

[3] We have also

> held that the INA is 'silent regarding the basis for determining whether a conviction is for a particularly serious crime' under § 1231(b)(3)(B)(ii) and therefore the BIA's interpretation of 'what an IJ may refer to in

Against this backdrop, the BIA here announced and applied a blanket rule against considering an individual's mental health as a factor when deciding whether his or her crime of conviction is particularly serious. *Matter of G-G-S-*, 26 I. & N. Dec. at 339, 347.**[4]** This decision is contrary to Congress's clearly expressed intent that the analysis of whether a crime is particularly serious "requires the agency to conduct a case-by-case analysis of convictions falling outside the category established by Congress," *Blandino-Medina*, 712 F.3d at 1345, because such categorical rules undermine the ability of the agency to conduct a case-by-case analysis in each case, *see Konou*, 650 F.3d at 1128; *see also Arteaga De Alvarez*, 704 F.3d at 740.

---

deciding whether a prior offense is a particularly serious crime' is entitled to deference under *Chevron*

so long as it is reasonable. *See Anaya-Ortiz v. Holder*, 594 F.3d 673, 677 (9th Cir. 2010) (quoting *Morales v. Gonzalez*, 478 F.3d 972, 980, 982 (9th Cir. 2007)). In *Anaya-Ortiz*, however, we considered a petitioner's argument that the agency could not rely on testimony given at his removal hearing, *id.*, not whether the agency could categorically bar consideration of certain categories of information contained in that testimony. *See id.* at 677-78 (deferring to the BIA's determination in *Matter of N-A-M*, 24 I. & N. 336, 342 (BIA 2007), that "all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction").

**[4]** The Board noted that its prohibition of mental health evidence applies in the context of withholding of removal and asylum, both of which have provisions which include the phrase "particularly serious crime." This opinion addresses the Board's rule in the context of withholding of removal only.

## C.  Chevron Step Two: The Board's Interpretation is not Reasonable

Even if the Board's decision were to survive step one of *Chevron*, it would fail step two. At step two of *Chevron*, we ask whether "the agency's [interpretation] is based on a permissible construction of the statute." 467 U.S. at 843; *see also Mayo Found. for Med. Educ. and Research v. United States*, 562 U.S. 44, 53 (2011) (stating that an agency's rule fails step two of *Chevron* if it is "arbitrary or capricious in substance" (quoting *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 242 (2004))).

The Board advanced two rationales for its broad rule precluding evidence of an individual's mental health as a factor in the particularly serious crime analysis: 1) that the Agency could not "reassess" the criminal court's findings, and 2) that mental health is never relevant. These rationales are unpersuasive and are inconsistent with the law of this Circuit and the Board's own decisions interpreting the INA. Thus, we conclude that the Board's interpretation of the INA is not reasonable and that the rule it created in this case is therefore not entitled to deference and must be vacated.

### 1.  The Board's Concerns of Going Behind the Criminal Court's Findings

The Board's primary explanation for precluding mental health-related evidence as a factor in a criminal act when determining whether an individual was convicted of a particularly serious crime is that the Agency "cannot go behind the decisions of the criminal judge and reassess any ruling on criminal culpability." *Matter of G-G-S-*, 26 I. & N. Dec. at 345. According to the Board, the extent to which "an individual's mental illness or disorder is relevant to his or her commission of an offense and conviction for the crime

are issues best resolved in criminal proceedings by the finders of fact." *Id.*

### a. The Board's Reasoning Rests on a Flawed Assumption

The Board reasons that a defendant has ample opportunity throughout various phases of the criminal proceedings to raise the issue of his or her mental condition at the time the crime was committed. *Id.*

> For instance, evidence of a defendant's mental condition may give rise to a reason to doubt his or her competency to stand trial. Further, such evidence may be submitted to establish an affirmative defense of not guilty by reason of insanity, to show the absence of specific intent or other mental states required for a conviction, or to be a mitigating factor for sentencing purposes. The defendant's mental condition may also be raised in post-conviction motions, appeals, and petitions.

*Id.* (footnotes omitted). The Board assumes that undertaking its own consideration of mental health-related evidence would undermine the criminal court's findings by requiring the Board to "reassess" those findings. This assumption is faulty on several fronts.

First, consideration of mental health-related evidence, like consideration of other underlying facts and circumstances surrounding a crime, does not require IJs to

assess criminal culpability or the validity of the conviction.[5] Rather, IJs may consider this evidence, where reliable, as part of the separate determination of dangerousness. The IJ is not retrying the question of guilt but assessing whether the circumstances of the crime are so serious as to justify removal to a country where there is a significant risk of persecution.[6] Therefore, an IJ, as a fact finder focused on that question, may choose to examine what he or she deems reliable evidence of mental health and decide whether such evidence bears on the dangerousness determination, and ultimately whether the individual committed a particularly serious crime, without disturbing, or "reassessing" the criminal court's findings.

Second, the Board's concerns about "going behind" a conviction are unreasonable given that, pursuant to various provisions of the INA, IJs regularly scrutinize the factual circumstances surrounding crimes of conviction. Indeed, in

---

[5] Indeed, IJs lack the power to undertake such review in removal proceedings. As the Board noted in *Matter of Martinez Espinoza*, "removal proceedings are not a venue for the relitigation of criminal prosecutions." 25 I. & N. Dec. 118, 125 (BIA 2009), *abrogated on other grounds by Mellouli v. Lynch*, 135 S. Ct. 1980 (2015) (citing *Matter of Ruiz-Massieu*, 22 I. & N. Dec. 833, 844 (BIA 1999)).

[6] Congress's use of the word "particularly," in "particularly serious crime," is significant. The definition of "particularly" is "to a higher degree than is usual or average[,]" setting apart these crimes from those which are serious only. *See Particularly*, Oxford Dictionaries, http://en.oxforddictionaries.com/definition/us/ particularly (last visited December 11, 2017). The criminal court undertakes no analysis of whether a crime is serious, let alone particularly serious, simply determining whether a defendant may be convicted for whatever crime is charged. Thus, the IJ's determination does not duplicate or retry the criminal court proceedings.

the Board's published decision issued just two months after its decision in this case, the Board noted that inquiries into the factual circumstances surrounding a crime "are by no means unusual in removal proceedings." *See Matter of Dominguez-Rodriguez*, 26 I. & N. Dec. 408, 413 (BIA 2014). That decision involved removal proceedings initiated under Section 237(a)(2)(B)(i) of the INA, which provides in pertinent part that "[a]ny alien who . . . after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . *other than a single offense involving possession for one's own use of [thirty] grams or less of marijuana*, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added).[7]

The Board observed that the language of the "possession for personal use" exception requires a "circumstance-specific inquiry," specifically noting that this inquiry "does not invite Immigration Judges to redetermine an alien's criminal guilt or innocence." *Matter of Dominguez-Rodriguez*, 26 I. & N. Dec. at 412–13. It therefore found that the Department of Homeland Security could "proffer any evidence that is reliable and probative" of whether the individual possessed more than 30 grams of marijuana, or that he possessed marijuana for some reason other than personal use. *Id*. at 414.

The *Dominguez-Rodriguez* Board recognized that "Immigration Judges are often called upon to examine the facts underlying a conviction to determine whether the alien is ineligible for asylum and withholding of removal as one convicted of a 'particularly serious crime.'" *Id.* at 413 n.9. It

---

[7] In *Dominguez-Rodriguez*, the individual had been convicted of possessing more than one ounce of marijuana in violation of section 453.336 of the Nevada Revised Statutes. 26 I. & N. Dec. at 408-09.

also listed several examples of other instances in which IJs "inquire into some of the factual circumstances surrounding the crimes," including "when deciding whether an alien's conduct gives the Attorney General 'reason to believe' that the alien has been an illicit trafficker in a controlled substance, a human trafficker, or a money launderer." *Id.* at 413 & n.9 (citing INA §§ 212(a)(2)(C), (H), (I)).

The Board here offers no explanation as to how an individual's mental condition at the time he or she committed a crime differs from other factual determinations the statute authorizes IJs to make related to the circumstances of a crime of conviction. Rather than preclude factual inquiry into the circumstances of the criminal court conviction, the *Dominguez-Rodriguez* Board found such inquiry both appropriate and necessary. *See id.* at 411 (recognizing the categorical approach is not applicable "in removal proceedings when the immigration provision under review 'call[s] for a circumstance-specific approach that allows for an examination, in immigration court, of the particular circumstances in which an offender committed the crime on a particular occasion.'" (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 202 (2013)) (alteration in original)).

Third, the Board's assumption that consideration of mental health would implicate reassessment of the criminal court's finding is flawed because the mental health evidence the individual wishes to offer in the immigration court may never have been presented to the criminal court.[8] Examining the phases of criminal proceedings that the Board identifies as those in which the defendant could raise the issue of his or her mental health, we conclude that there are any number

---

[8] The administrative record here does not reveal what evidence was before the criminal court regarding Petitioner's mental health.

of reasons why such evidence might not be offered and therefore never be taken into consideration by the criminal court—meaning that consideration of mental health in immigration proceedings would not require reconsideration of anything from the criminal case. For example, no specific mental state is required as an element of strict liability offenses, and similarly, mental illness is not a defense to crimes that require only negligence; and at sentencing judges may exercise their discretion and choose not to consider mental illness in making their decision.[9]

### b. *The Board's Reasoning is Inconsistent With its Earlier Decision*

Moreover, the Board's conclusion here that considering mental health for immigration purposes could constitute improper reassessment of the criminal court findings conflicts with its decision in *In re N-A-M-*. The *N-A-M-* Board found that "all reliable information may be considered

---

[9] The Board lists competency to stand trial as one opportunity for mental illness to be considered. However, competency relates to the defendant's mental state during criminal proceedings, and has nothing to do with his or her mental state at the time of the offense. *See Dusky v. United States*, 362 U.S. 402 (1960) (per curiam) (holding that the standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." (internal quotation marks omitted)).

Additionally, a defendant may choose not to pursue an affirmative defense of not guilty by reason of insanity due to concerns of being stigmatized, or in light of the research indicating that those defendants who raise insanity defenses get significantly longer sentences than those convicted without arguing insanity. Fatma Marouf, *Assumed Sane*, 101 Cornell L. Rev. Online 25, 30 (2016).

in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." 24 I. & N. Dec. 336, 342. As the *N-A-M-* Board explained:

> It has been our practice to allow both parties to explain and introduce evidence as to why a crime is particularly serious or not. We see no reason to exclude otherwise reliable information from consideration in an analysis of a particularly serious crime once the nature of the crime, as measured by its elements, brings it within the range of a 'particularly serious' offense.

*Id.* at 344. We previously deferred to this interpretation as reasonable under step two of *Chevron*. *See Anaya-Ortiz*, 594 F.3d at 677.

Here, the Board cited *In re N-A-M-* approvingly, as if applying it. *See Matter of G-G-S-*, 26 I. & N. Dec. at 343. However, in reality, its decision to constrain the evidence IJs may consider when making a particularly serious crime determination is at least inconsistent with, if not directly in contradiction with its earlier holding permitting consideration of "all reliable information." *See In Re N-A-M-*, 24 I. & N. Dec. at 338, 342. Petitioner's case makes this inconsistency clear—despite not disputing the reliability of the information Petitioner submitted concerning his mental illness, the Board entirely precluded consideration of that evidence. Given that the Board made no attempt to address the apparent inconsistencies between its earlier rule and the rule at issue here, we find its current interpretation to be unreasonable and thus decline to afford it deference. *See*

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) ("[A]n '[u]nexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice,'" and thus finding that the interpretation is not entitled to *Chevron* deference. (quoting *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005))); *see also Marmolejo-Campos v. Holder*, 558 F.3d 903, 920 n.2 (9th Cir. 2009) (en banc).

Given the severe repercussions of being found to have committed a particularly serious crime, the risk of precluding relevant evidence that might alter that determination is unreasonable. Furthermore, this risk is readily avoided by permitting the IJ to use his or her discretion in weighing relevant, reliable evidence of mental health rather than categorically barring this evidence in all cases.

For all of these reasons the Board's interpretation of the INA does not warrant deference under *Chevron*.

### 2. The Board's Conclusion That Mental Health Evidence is Always Irrelevant

The Board also concluded that Petitioner's "mental condition does not relate to the pivotal issue in a particularly serious crime analysis, which is whether the nature of his conviction, the sentence imposed, and the circumstances and underlying facts indicate that he posed a danger to the community." *Matter of G-G-S-*, 26 I. & N. Dec. at 346 (citations omitted). In so finding, the Board reasoned that Petitioner's mental illness "does not lessen the danger that his actions posed to others and is therefore not relevant to

[its] determination that his offense is a particularly serious crime." *Id.* [10]

We find the Board's conclusion to be unreasonable because it is inconsistent with its own precedent recognizing the relevance of motivation and intent to the particularly serious crime determination. *See Alphonsus*, 705 F.3d at 1048 ("The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasoned explanation for doing so." (quoting *Israel v. I.N.S.*, 785 F.2d 738, 740 (9th Cir. 1986))). In *Matter of L-S-*, the Board found significant that an individual convicted of alien smuggling did not intend to harm the victim. 22 I. & N. Dec. 645, 655–56 (BIA 1999). Indeed, the Government concedes that a particularly serious crime analysis permits consideration of an individual's motivation. *See Alphonsus*, 705 F.3d at 1048 (finding no intent to harm either the arresting officer or members of the public).

And in its decision in this case, the Board noted that it might be "appropriate to consider whether an [individual's] conduct was 'inherently base, vile, or depraved' in deciding whether a crime is particularly serious." *Matter of G-G-S-*, 26 I. & N. Dec. at 347 (quoting *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999)). Although it clarified that "an inquiry regarding evil intent or fraud is not necessarily dispositive," the Board's acknowledgement that an individual's "evil intent" might bear on the particularly serious crime determination inherently contradicts its conclusion that mental condition is never relevant to that analysis, especially

---

[10] In order for the Board to have reached this conclusion on any factual basis, it would have had to actually consider Petitioner's mental illness in the context of his crime of conviction, which is the very thing the Board's blanket rule purports to prohibit.

given that Respondent does not dispute that an individual's mental illness might impact his or her intent. *See id.*

Thus, it necessarily follows that an individual's mental health could be relevant to the determination of whether a crime is particularly serious, contrary to the Board's reasoning here.[11] We accordingly find the Board's rationale—that evidence of an individual's mental condition at the time he or she committed the crime of conviction is categorically irrelevant—is unreasonable. *See Marmolejo-Campos*, 558 F.3d at 920.

## IV.    CONCLUSION

It is irrebuttably presumed that once a crime is determined to be particularly serious, the individual who committed that crime presents a danger to the community such that he or she is not entitled to protection by this country from persecution in another country. Given this narrow focus and in light of this severe consequence, the Agency must take all reliable, relevant information into consideration when making its determination, including the defendant's mental condition at the time of the crime, whether it was considered during the criminal proceedings or not. This ensures that the Agency will in fact examine the circumstances of each conviction individually, taking into

---

[11] Consider, for instance, a situation in which an individual, who had suffered from intimate partner violence, was convicted of assaulting his or her abuser, and reliable evidence showed that the individual's diagnosed post-traumatic stress disorder had played a substantial motivating role in the assault. Such a set of facts might well provide no defense to criminal conviction, even while bearing substantially on an IJ's determination of whether that individual poses a danger to the community.

account all of the circumstances, as required under the case-by-case approach.

Because the Board's rule in this case conflicts with these principles, we find that the Agency's interpretation is unreasonable and not entitled to deference under *Chevron*. For the foregoing reasons, we vacate and remand to the BIA for further proceedings consistent with this decision.[12]

**Petition GRANTED.**

---

[12] In light of this disposition, we do not address Petitioner's claim that the BIA's categorical prohibition discriminates against individuals with mental disabilities in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and implementing regulation 28 C.F.R. 39.130.