NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICARDO ALCIDES VASQUEZ-CRUZ, <br><br> Petitioner, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General, <br><br> Respondent. | No.   19-71238 <br><br> Agency No. A095-142-120 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 14, 2020[**]
San Francisco, California

Before:  FRIEDLAND and BENNETT, Circuit Judges, and RAKOFF,[***] District Judge.

Ricardo Alcides Vasquez-Cruz ("Vasquez"), a native and citizen of El

Salvador, petitions for review of a decision of the Board of Immigration Appeals

("BIA") affirming the decision of an Immigration Judge ("IJ") denying Vasquez's

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

applications for asylum, withholding of removal, and relief under the Convention

Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. *See*

*Fermin v. Barr*, 958 F.3d 887, 891, 895 & n.4 (9th Cir. 2020). We grant the

petition for review in part and deny it in part.

**1.** The BIA did not err in denying Vasquez's asylum application on the

basis that it was untimely filed. A petitioner who does not apply for asylum within

one year of his or her arrival in the United States may be considered for asylum

only if he or she demonstrates "either the existence of changed circumstances

[that] materially affect [his or her] eligibility for asylum or extraordinary

circumstances relating to the delay in filing an application within the period." 8

U.S.C. § 1158(a)(2)(B), (D).

Vasquez arrived in the United States in June 1999 but did not apply for

asylum until 2018. He argues that both changed and extraordinary circumstances

excuse his untimeliness. First, he contends that his half-brother's flight from El

Salvador in 2000 in response to gang threats and worsening gang violence in El

Salvador generally constituted changed circumstances that banished "any hope"

that he could safely return to El Salvador. But Vasquez already had a pronounced

fear of the gang by the time he came to the United States, so these developments

did not "materially affect" the strength of Vasquez's asylum claim. 8 U.S.C.

§ 1158(a)(2)(D); *see also Vahora v. Holder*, 641 F.3d 1038, 1047 (9th Cir. 2011)

(excusing the untimeliness of a petitioner's asylum application where changed

2

circumstances made "his claim . . . substantially stronger"). Second, Vasquez argues that his obtaining Temporary Protected Status ("TPS") in July 2001 was an extraordinary circumstance justifying his delay in applying for asylum. Vasquez, however, did not become eligible for TPS until March 2001, more than eight months after the one-year deadline by which he had to file his asylum application. TPS thus did not "directly relate[] to [his] failure to file the application within the 1-year period." 8 C.F.R. § 1208.4(a)(5).

**2.** The BIA likewise did not err in concluding that Vasquez's 2018 conviction under California Penal Code § 273.5(a) was a "particularly serious crime" that rendered him ineligible for withholding of removal. 8 U.S.C. § 1231(b)(3)(B)(ii). Our jurisdiction to review the BIA's particularly serious crime determination "is limited to ensuring that the agency relied on the appropriate factors and proper evidence . . . . We may not reweigh the evidence and reach our own determination about the crime's seriousness." *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1077 (9th Cir. 2015) (alteration, citations, and quotation marks omitted).

In concluding that Vasquez's domestic violence offense against his then-partner was particularly serious, the BIA properly considered "the nature of the conviction, the underlying facts and circumstances and the sentence imposed." *See Delgado v. Holder*, 648 F.3d 1095, 1107 (9th Cir. 2011) (en banc). The BIA noted that California Penal Code § 273.5 "require[d] that corporal injury be willfully

3

inflicted"; that Vasquez "grabb[ed] the victim by the neck and repeatedly hit[]

her"; that the altercation "took place in front of [Vasquez and his then-partner's]

young child, whom [Vasquez] hit[1] when he tried to intervene to protect his

mother"; and that Vasquez was given a 364-day sentence for the offense. Thus,

the agency relied on the appropriate factors and properly considered the particular

circumstances of the crime.

We disagree with Vasquez's argument that the agency "erred in failing to

determine whether [he] is a danger to the community" in light of evidence that he

had never hit his then-partner at any other time in their relationship, and that he has

since rehabilitated from the alcoholism that had affected him at the time of his

offense. "It is irrebuttably presumed that once a crime is determined to be

particularly serious, the individual who committed that crime presents a danger to

the community." *Gomez-Sanchez v. Sessions*, 892 F.3d 985, 996 (9th Cir. 2018).

Accordingly, the agency was not required to engage in a separate analysis of

Vasquez's future dangerousness once it concluded that his 2018 offense was

particularly serious.

**3.** We hold, however, that the agency erred in two ways in holding that

---

[1] The parties agree the BIA incorrectly stated that Vasquez "hit" his child during the altercation. In fact, Vasquez testified that he "pushed" his son. But the BIA's misstatement regarding this one fact did not render its overall particularly serious crime determination arbitrary, irrational, or contrary to the law, such that the determination was an abuse of discretion. *See Avendano-Hernandez*, 800 F.3d at 1077; *Tadevosyan v. Holder*, 743 F.3d 1250, 1252-53 (9th Cir. 2014).

Vasquez was not eligible for relief under the CAT.

*First*, the agency failed to consider record evidence that was directly at odds with its stated reasons for denying Vasquez's CAT claim. The IJ cited four bases for denying the claim: (1) Vasquez failed to show an individualized risk of being subjected to torture; (2) Vasquez experienced no physical violence after he reported a gang leader to the police; (3) the risk that the gang would continue to target Vasquez after his long absence from El Salvador is low; and (4) Vasquez could safely relocate within El Salvador to avoid the gang. But there was evidence in the record contrary to each of these conclusions. For example, Vasquez's testimony, which the IJ accepted as credible, detailed that the gang had specifically targeted Vasquez for retribution because his younger brother refused to join the gang (and was murdered for his defiance), and because Vasquez reported a prominent gang member to the police. An expert on Salvadoran gangs agreed that Vasquez "is near the top of the list of persons likely to be targeted . . . by gangs." Vasquez further testified that gang members had hit him with the butt of a rifle on one occasion, and that he was able to avoid further physical harm only by dropping out of school and going into hiding. And the expert explained that Vasquez would not be safe from the gang anywhere in El Salvador, notwithstanding the passage of almost two decades since he had last lived there. The expert observed that Vasquez and his family "have continued to face" surveillance and threats by the gang, and explained that "the reach and power of gangs in El Salvador knows no

bounds and will find [Vasquez] wherever he is in [the] country."

The IJ did not address the above evidence in evaluating Vasquez's CAT claim and failed to even mention the expert's testimony. The BIA acknowledged that "the Immigration Judge did not specifically discuss these documents," yet nevertheless deemed it sufficient that the IJ "state[d] that he 'considered all relevant evidence' in the record in making his decision." But we have emphasized that "where there is any indication that the [agency] did not consider all of the evidence before it, a catchall phrase [asserting that the agency had reviewed all the evidence] does not suffice, and the decision cannot stand." *Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011). "Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence"—the very defects evident in the agency's decision here. *Id.* at 772; *see also Parada v. Sessions*, 902 F.3d 901, 914-15 (9th Cir. 2018).

*Second*, the agency neglected to consider one of the two bases for Vasquez's CAT claim. Vasquez told the agency that he feared torture not only because he would be harmed by the gang, but also because deportees from the United States are targets of crime and violence in El Salvador due to their perceived wealth. Neither the IJ nor the BIA discussed the latter aspect of Vasquez's claim. That was error. "CAT claims must be considered in terms of the aggregate risk of torture from all sources." *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015). Thus, when the agency fails to take into account a source of potential

6

torture asserted by a petitioner, remand for further consideration of the petitioner's claim is necessary. *See Cole*, 659 F.3d at 773-74.

In light of these errors in the evaluation of Vasquez's CAT claim, we remand to the BIA for further proceedings, including, if appropriate, remand to the IJ. On remand, the agency is "required to evaluate the expert testimony, as well as the documentary evidence in the record." *Id.* at 771.[2]

Vasquez's motion for a stay of removal is granted.

Each party shall bear its own costs for this petition for review.

**PETITION FOR REVIEW GRANTED IN PART AND DENIED IN PART; REMANDED.**

---

[2] In affirming the IJ's denial of Vasquez's CAT claim, the BIA stated, "we are unable to conclude that the Immigration Judge committed legal error or clear factual error in declining to find a *likelihood* that a public official will acquiesce" to any torture Vasquez might suffer, even though the IJ did not make any factual findings or articulate any legal reasoning regarding that issue. Should the agency determine on remand that an analysis of the government acquiescence element of Vasquez's CAT claim is required, we note that the IJ would have to conduct that analysis in the first instance. *See* 8 C.F.R. § 1003.1(d)(3)(iv).