NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAR 21 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MOHAMMED ALSAYED
ABDELSALAM,

                Petitioner,

   v.

MERRICK B. GARLAND, Attorney
General,

                Respondent.

No. 21-787

Agency No.
A208-954-600

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 18, 2023
San Francisco, California

Before: BEA, CHRISTEN, and JOHNSTONE, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge BEA.

     Mohammed Alsayed Abdelsalam, a native and citizen of Egypt, petitions for

review of a decision from the Board of Immigration Appeals ("BIA") denying his

second motion to reopen immigration proceedings. The BIA previously determined

that Abdelsalam, a Jehovah's Witness, has "an objectively reasonable fear of

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

persecution" in Egypt based on his religion. An Immigration Judge ("IJ")

nevertheless found that Abdelsalam was ineligible for asylum and withholding of

removal because his 2017 conviction was for a "particularly serious crime." *See* 8

U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). Abdelsalam has unsuccessfully

challenged the denial of relief to the BIA in an appeal and two motions to reopen,

and has been represented by various counsel or proceeded pro se at different stages

throughout these proceedings.[1]

Before us now is the BIA's denial of Abdelsalam's second motion to reopen,

which raised ineffective assistance of counsel claims and due process claims.

Because the motion was both time and number barred, *see* 8 U.S.C. § 1229a(c)(7),

Abdelsalam argued he was entitled to equitable tolling. We have jurisdiction over

Abdelsalam's constitutional claims pursuant to 8 U.S.C. § 1252.

1. According to the records of the Department of Homeland Security

("DHS"), Abdelsalam has multiple serious mental illnesses, including major

depressive disorder, PTSD, and psychosis with delusions. As set forth in his

October 2020 declaration in support of his second motion to reopen, Abdelsalam

has a lifelong history of mental illness, with symptoms including hallucinations,

paranoia, and unpredictable behavior. After fleeing religious persecution in Egypt,

---

[1] Because the parties are familiar with the facts and complex procedural history, we
set them forth only as necessary.

Abdelsalam received effective treatment in Sweden, including an antipsychotic medication that alleviated his symptoms. In January 2017, Abdelsalam arrived in the United States, with a one-month supply of the medication, to join his fiancée. Their relationship quickly soured, however, and Abdelsalam had to leave their house. Homeless, he soon ran out of his antipsychotic medication. After several months without treatment, Abdelsalam was "constantly hearing voices and having psychotic episodes, and becoming extremely paranoid, anxious and depressed." During this time, he attacked his ex-fiancée, for which he later entered a no-contest plea to one count of making criminal threats in violation of Cal. Penal Code § 422(a). This offense became the basis for the IJ's particularly serious crime finding.

While Abdelsalam was in DHS detention and less than two months before his merits hearing, DHS care providers diagnosed him with unspecified psychosis, noting symptoms of visual and auditory hallucinations. They prescribed an antipsychotic and DHS continued to provide mental health treatment, with additional diagnoses and levels of treatment, throughout Abdelsalam's detention and immigration proceedings. But DHS did not inform the court of his mental illness or request a competency hearing. Abdelsalam's attorneys, unaware of his mental illness, presented no mental illness evidence at the merits hearing or on appeal, and later blamed DHS for their ignorance. Abdelsalam asserts that, had

DHS produced its records or had his attorneys independently investigated his mental illness, the IJ would have had evidence relevant to the particularly serious crime determination that he set forth in his declaration.

DHS does not contest that it had a duty to produce its records of Abdelsalam's mental illness and failed to do so. It contends only that the BIA did not err in finding that Abdelsalam failed to establish resulting prejudice in light of the IJ's particularly serious crime determination.

"[A] crime is particularly serious if the nature of the conviction, the underlying acts and circumstances[,] and the sentence imposed justify the presumption that the convicted immigrant is a danger to the community." *Delgado v. Holder*, 648 F.3d 1095, 1107 (9th Cir. 2011) (en banc). The IJ must "assess[] whether the circumstances of the crime are so serious as to justify removal to a country where there is a significant risk of persecution." *Gomez-Sanchez v. Sessions*, 892 F.3d 985, 994 (9th Cir. 2018). Accordingly, "the Agency must take all reliable, relevant information into consideration when making its determination, including the defendant's mental condition at the time of the crime." *Id*. at 996.

We review the denial of a motion to reopen for abuse of discretion. *Salim v. Lynch*, 831 F.3d 1133, 1137 (9th Cir. 2016). While the BIA is not required to parse every argument or piece of evidence, *Ramirez-Villalpando v. Holder*, 645 F.3d 1035, 1040 (9th Cir. 2011), it is required to "'consider and address in its entirety

the evidence submitted by a petitioner' and to 'issue a decision that fully explains the reasons for denying a motion to reopen,'" *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (quoting *Mohammed v. Gonzales*, 400 F.3d 785, 792–93 (9th Cir. 2005)).

We assume the BIA considered the entire record in the absence of an affirmative indication that it has not done so. Here, there is such indication,[2] and we question whether the BIA would have concluded in its order on the second motion to reopen that Abdelsalam "ha[d] not demonstrated that he had mental health conditions at the time of his arrest" if the BIA had considered the October 2020 declaration. The BIA's analysis focused on issues of Abdelsalam's competency to participate in proceedings without safeguards. As to the separate issue of evidence of mental illness relevant to the particularly serious crime determination, however, the BIA appears to have considered only DHS's records of Abdelsalam's then-current mental health condition, finding that Abdelsalam failed to explain its relevance to his 2017 conviction. Yet Abdelsalam's October 2020 declaration put such potentially relevant evidence before the BIA:

---

[2] For example, the BIA's ruling on the second motion to reopen reached the merits of a claim that it had previously dismissed, apparently unaware that our court had denied review of the claim two months earlier. *Compare Abdelsalam v. Garland*, No. 19-72018, 2021 WL 3011984, at *1 (9th Cir. July 15, 2021) *with* BIA Order Denying Second Motion to Reopen at 4-5.

Abdelsalam suffers from serious but treatable psychiatric conditions, and he had run out of medication at the time he attacked his ex-fiancée. In his declaration, Abdelsalam leads into his discussion of the crime by explaining that he had run out of medication, "did not act right sometimes," was "constantly hearing voices and having psychotic episodes," and was "becoming extremely paranoid, anxious and depressed" at the time. The IJ would have had discretion to consider such evidence, which may bear on the circumstances of Abdelsalam's crime and Abdelsalam's dangerousness to the community.[3] *See Gomez-Sanchez*, 892 F.3d at 996; *see also Matter of B-Z-R-*, 28 I. & N. Dec. 563, 566–67 (Att'y Gen. 2022).[4]

Accordingly, we grant the petition in part and remand to the BIA to clarify whether it considered Abdelsalam's October 2020 declaration in its prejudice analysis relevant to the IJ's particularly serious crime determination, and if it did not, to reconsider whether reopening is warranted.

2. To the extent Abdelsalam raised claims of ineffective assistance of

---

[3] The dissent does not consider this context to be potentially relevant. Respectfully, we do, and we grant the petition because of indications the BIA did not consider this context at all.

[4] Abdelsalam requests remand to the BIA to reconsider the motion to reopen in light of its subsequent decision in *Matter of B-Z-R-*, which he contends announced a new, broader rule than our earlier decision in *Gomez-Sanchez*. However, Abdelsalam represents that he has filed a third motion to reopen presenting that issue to the BIA; therefore, the BIA appropriately will decide that issue in the first instance.

counsel separate from counsel's failure to present mental illness evidence and argument relevant to the particularly serious crime determination, the BIA did not abuse its discretion in finding Abdelsalam failed to establish prejudice. These claims include generalized complaints about failures to prepare adequately for the merits hearing or to raise evidentiary objections, failures to pursue other nondescript challenges to the particularly serious crime determination, and language or communication failures unrelated to the identification of relevant mental illness issues. Contrary to Abdelsalam's contention, the BIA did not err by requiring a showing of prejudice. *See Singh v. Holder*, 658 F.3d 879, 884–85 (9th Cir. 2011). Nor will we apply a presumption of prejudice, where Abdelsalam's attorney did file a timely, albeit unsuccessful, brief on appeal. *Cf. Singh v. Ashcroft*, 367 F.3d 1182, 1189 (9th Cir. 2004) (applying rebuttable presumption of prejudice to attorney's failure to file brief because so doing deprived the petitioner of a direct appeal). We deny those portions of his petition for review unrelated to the possible failure to consider evidence of Abdelsalam's mental illness in the agency's particularly serious crime determination.

3. Abdelsalam challenges the BIA's discretionary decision not to reopen his case *sua sponte*. Where, as here, "the BIA cited only to 'exceptional circumstances' and offered no legal or constitutional basis," we lack jurisdiction. *Greenwood v. Garland*, 36 F.4th 1232, 1237 (9th Cir. 2022). We dismiss that part

of his petition.

**PETITION GRANTED IN PART, DENIED IN PART, DISMISSED IN PART, and REMANDED.**[5]

---

[5] Each party shall bear its own costs. *See* Fed. R. App. P. 39(a)(4).

*Mohammed Alsayed Abdelsalam v. Merrick Garland* (21-787)

BEA, Circuit Judge, concurring in part and dissenting in part:

I agree the petition should be denied as to the claims of ineffective assistance of counsel and dismissed as to the challenge to the BIA's refusal to reopen *sua sponte* removal proceedings. But my colleagues appear to misstate the record and to misapply Circuit precedent to conclude that the petition for review should be granted for the BIA to clarify whether it considered the petitioner's declaration. Because that declaration is fatally deficient, I see no reason to grant the petition. I respectfully dissent.

As an initial matter, my colleagues see "an affirmative indication" that the BIA failed to consider the petitioner's October 2020 declaration where I do not. When the BIA denied the petitioner's second motion to reopen, it decided that he displayed no indicia of incompetency in his October 2018 merits hearing, but it did not mention this Court's decision in *Abdelsalam v. Garland*, 2021 WL 3011984 (9th Cir. July 15, 2021) (holding the petitioner displayed no indicia of incompetency in his October 2018 merits hearing). My colleagues infer that, because the BIA did not note that decision, the BIA may have failed to consider "the entire record" and, hence, may have ignored the petitioner's declaration. This reasoning is baseless. That the BIA did not refer to this Court's prior decision provides little to no support for the proposition that the BIA did not review and consider the papers the petitioner

1

submitted in support of his second motion to reopen. I therefore see no "affirmative indication" that the BIA failed to consider the petitioner's October 2020 declaration.

But whether the BIA failed to consider the declaration matters only if this failure could have changed the BIA's decision to deny the second motion to reopen. *See Singh v. Gonzales*, 494 F.3d 1170, 1172 (9th Cir. 2007) ("'[T]he BIA is obligated to consider and address in its entirety the evidence submitted by a petitioner [with a motion to reopen],' and where its failure to do so could have affected its decision, remand is appropriate." (quoting *Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005))).

The majority asserts that the BIA's failure to consider the declaration could have changed its decision, as the declaration "put . . . potentially relevant evidence before the BIA" relating to the petitioner's claimed mental illness and sufficiently "explain[ed this claimed mental illness's] relevance to his 2017 conviction." Here, my colleagues assume the petitioner's declaration stated something it did not, namely, that the petitioner hid in the trunk of his ex-fiancée's car with a six-inch fixed blade knife and attacked her *because* he did not have access to his Seroquel medication and was therefore suffering from a mental illness. The petitioner declared nothing of the sort.

2

Instead, the petitioner declared that he was arrested and convicted *not* because of the effects of running out of Seroquel, but because he was double-crossed by his ex-fiancée:

> On April 28, 2017, I agreed to meet Mona [the ex-fiancée] near the house I bought. Mona set up a meeting with me at her workplace, saying she would drop any charges against me, pay me $20,000 of my money and help to pay for my asylum process. When I arrived close to our meeting place, I saw that Mona had called the police and ICE. I tried to hide but they found me. Police arrested me on April 28, 2017, booked me and then released me. The day after, I found out that ICE had lodged an Immigration Detainer on me.

In so declaring, the petitioner repeated the same account of the events that led to his arrest from his testimony before the immigration judge at his October 2018 merits hearing.

The petitioner also declared that he pleaded no contest to the criminal charge that resulted from his arrest *not* because his mental state was altered account he ran out of Seroquel, but because he was unaware the plea would affect his asylum claim:

> On August 14, 2017, I pled no contest to California Penal Code Section 422(A) as per a plea deal. I was sentenced to 364 days. They told me it would have no consequence on my asylum claim because I was only sentenced to 364 days. I was not told that it could be a particularly serious crime. I had no idea about any immigration consequences of my plea or that it could affect my asylum claim. I would have never pled to that charge if I understood the nature of that charge or its consequences for my immigration case.

*Nowhere* in his declaration did the petitioner declare that running out of Seroquel (or the effects that lack of medication would have on any mental illness generally) was

3

the reason for his actions against his ex-fiancée, his arrest, or his conviction for criminal threat with intent to terrorize. The petitioner did not declare that he was hearing voices at the time he committed his crime or that such voices told him to commit the crime. Indeed, the petitioner failed to declare that he had even attacked his ex-fiancée at all. The majority's assertion that "potentially relevant evidence" was before the BIA therefore rests on the baseless argument of counsel and a misstatement of the record. Accordingly, I cannot fault the BIA for concluding that the petitioner failed to explain how disclosure of his claimed mental illness would have led to a different ruling on whether his 2017 conviction was for a particularly serious crime.

Because my colleagues erroneously conclude that the petitioner's declaration attributed his crime to his claimed mental illness, their reliance on *Gomez-Sanchez v. Sessions*, 892 F.3d 985 (9th Cir. 2018), is misplaced. In *Gomez-Sanchez*, we held that "the Agency must take all reliable, relevant information into consideration when making its particularly serious crime determination, including the defendants' mental condition at the time of the crime." *Id.* at 966. But we subsequently clarified that *Gomez-Sanchez* "did not impose a new standard that the [immigration judge] must *always* reference a petitioner's mental health in a particularly serious crime determination. Rather, . . . the consideration of mental illness anticipated by *Gomez-Sanchez* is required *only where the petitioner presents evidence directly attributing*

4

*the crime to his mental illness*." *See Benedicto v. Garland*, 12 F.4th 1049, 1062 (9th Cir. 2021) (cleaned up) (emphasis added). Because the petitioner's declaration did not directly—or, indeed, at all—attribute his crime to mental illness, nothing in the declaration would have changed the immigration judge's particularly serious crime determination.

For these reasons, I would deny the petition in part and dismiss it in part.